Opinion filed March 20, 2015



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00370-CR

_____

**REGINALD LEVON COOK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CR13660**

### O P I N I O N

The jury convicted Reginald Levon Cook of delivery of more than four grams but less than 200 grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). The jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal

Justice for a term of fourteen years and a fine of $5,000. Appellant challenges his conviction in four issues. We affirm.

*Background Facts*

Appellant's conviction for cocaine delivery arises out of Appellant's sale of drugs to a confidential informant. The confidential informant, Lindsey Ford, testified that she had used and sold drugs in the past and that she was familiar with who sold drugs in Stephenville. In November 2010, Ford[1] agreed to work as a confidential informant with the Stephenville Police Department in connection with its undercover investigations of deliveries of controlled substances.

Sergeant Curtis Dees, a fourteen-year officer with the Stephenville Police Department, works in the Criminal Investigation Division. Sergeant Dees testified about the use of confidential informants by the Stephenville Police Department to conduct narcotics investigations and the types of operations in which confidential informants are used. Sergeant Dees also outlined the process involved in using a confidential informant, including pre- and post-buy searches of the informants, the use of marked money, and audio and video recordings of the buys.

Ford testified that, on December 29, 2010, she met up with Sergeant Dees and Sergeant Ford for the purpose of making a drug buy from Appellant. Ford said that she sent text messages to Appellant and agreed to buy two "eight-balls" of cocaine from him for $270. An eight-ball of cocaine is 3.5 grams, or an eighth of an ounce of cocaine. Ford testified that she met with Sergeant Dees and Sergeant Ford at their office, where Staci King, the records clerk for the police department, took her into a back room and searched her and her belongings. The officers then equipped Ford with audio and video recording equipment to record the transaction with Appellant.

---

[1]As set forth below, one of the police officers involved in this case was Sergeant Russell Ford. For the sake of clarity, we will refer to Lindsey Ford as "Ford" and will refer to Russell Ford as "Sergeant Ford." Sergeant Ford testified that he and Ford are not related.

Ford planned to buy cocaine from Appellant at the Bargain Town convenience store. The officers dropped Ford off a few blocks away from Bargain Town. Ford waited for Appellant at Bargain Town for a few minutes. After receiving a text from Appellant, Ford walked across the street to the Riverwalk Apartments. Ford then got into Appellant's car, and they drove off. Ford testified that, as they were driving off, she gave Appellant the money for the cocaine. Ford said that Appellant immediately gave her the two eight-balls of cocaine. Appellant then dropped Ford off a block away from her home. Sergeant Dees and Sergeant Ford picked up Ford a few minutes later. Ford gave the recording device and the cocaine to Sergeant Dees and Sergeant Ford.

At trial, the video of the transaction between Ford and Appellant was admitted into evidence, along with photos of the text messages between Ford and Appellant. The cocaine recovered by Sergeant Dees from Ford was also admitted into evidence, along with the report of the lab analysis performed by William Todsen with the Texas Department of Public Safety Crime Laboratory in Abilene.

*Issues*

In his first issue, Appellant challenges the sufficiency of the evidence supporting his conviction by asserting that the testimony of the confidential informant was not sufficiently corroborated under the covert agent rule. Appellant alleges in his second issue that the trial court erred in failing to include an instruction in the court's charge about the requirement that a covert agent's testimony be corroborated. In his third issue, he asserts that the trial court should have granted a motion for new trial based upon the admission of extraneous offense evidence during the guilt/innocence phase. In his final issue, Appellant challenges the admission of the text messages.

*Corroboration of Covert Agent's Testimony*

Article 38.141 of the Code of Criminal Procedure sets out the covert agent rule, which states as follows:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a), (b) (West 2005). The standard for evaluating the sufficiency of the corroboration of the testimony of a covert witness, such as a confidential informant, is the same as that used for evaluating the sufficiency of the corroboration of the testimony of an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 256–58 (Tex. Crim. App. 2008). Thus, when weighing the sufficiency of corroborating evidence under Article 38.141(a), we must exclude the testimony of the covert agent from consideration and examine the remaining evidence to determine whether there is evidence that tends to connect the defendant to the commission of the offense. *Id.* at 258. The tends-to-connect standard does not present a high threshold. *Randall v. State*, 218 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.).

Standing alone, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt. *Malone*, 253 S.W.3d at 257. To be sufficient, the corroborating evidence must show more than just the "mere presence" of the

4

defendant at or near the scene of the crime. *Id.* However, the corroborating evidence does not have to directly link the defendant to the crime. *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd); *Smith v. State*, 211 S.W.3d 476, 478 (Tex. App.—Amarillo 2006, no pet.). Instead, the corroborating evidence need only tend to connect the defendant to the offense. *Malone*, 253 S.W.3d at 258–59. We review the corroborating evidence in the light most favorable to the verdict. *Taylor*, 328 S.W.3d at 578; *Smith*, 211 S.W.3d at 478.

Appellant contends that, without Ford's testimony, "we have only unidentified text message communications regarding the set-up of a drug deal." We disagree with Appellant's limited view of the corroborating evidence.

Sergeant Dees testified that Ford was working with the Stephenville Police Department as a confidential informant. He and Sergeant Ford reviewed the text messages exchanged between Ford and Appellant to set up the purchase of two eight-balls of cocaine from Appellant on December 29, 2010. Ford met with Sergeant Dees and Sergeant Ford on December 29, prior to the officers transporting her to Bargain Town. During that meeting, King thoroughly searched Ford and her belongings to make sure that Ford did not have any illegal drugs in her possession prior to the transaction.[2] The officers equipped Ford with a recording device and gave her $270 in cash for the purchase of the cocaine.

Sergeant Dees testified that he and Sergeant Ford observed Ford at Bargain Town after they dropped her off near the convenience store. Sergeant Dees testified that he recognized the car that Ford subsequently entered as being Appellant's car. The officers maintained observation of Ford and Appellant. Sergeant Dees testified that, soon after Appellant dropped off Ford near her house, he and Sergeant Ford waited a few minutes for Appellant to drive away and then

---

[2]King also testified at trial about her search of Ford prior to the transaction.

5

picked up Ford from her house. The officers subsequently recovered approximately two eight-balls of cocaine from Ford.

The officers inspected the small hidden camera that they had placed in Ford's purse prior to transporting her to the convenience store and found that it had recorded the entire transaction. The video was admitted into evidence during Ford's testimony and published to the jury at that time. Prior to Ford's testimony at trial, Sergeant Dees testified that he had reviewed the video and that he was able to recognize Appellant in the video as the person with whom Ford was dealing. Sergeant Dees also testified that he could observe Ford handing the cash to Appellant on the video but that he could not observe what Appellant handed back to Ford. Sergeant Ford also testified about the video. He testified that if the replay of the video is slowed down, an "exchange" between Appellant and Ford can be seen but that the exact nature of the thing that Appellant gave Ford cannot be seen in the video. Our review of the video in both real time and slow motion confirms the testimony of Sergeant Dees and Sergeant Ford regarding its depiction of the exchange between Appellant and Ford.

Under the applicable standard of review, we are required to review the corroborating evidence in the light most favorable to the verdict. The most significant piece of corroborating evidence in this case is the video of the transaction. The fact that Ford served as the sponsoring witness for the video exhibit does not preclude it from serving as corroborating evidence because the jury was able to watch the video and make its own determination regarding the images depicted in the video. *See Cantelon*, 85 S.W.3d at 459–62 (jury able to hear actual audio recording and view video recording). In *Taylor*, we rejected the State's reliance on a recording to serve as corroborating evidence for a covert agent's testimony because the recording was of extremely poor quality and because, "[w]ithout the testimony of the confidential informant . . . , it would be

impossible to understand from the recording what was taking place." 328 S.W.3d at 577. The video recording in this case is much different because the police officers and the jurors themselves could observe what transpired. In this regard, Sergeant Dees and Sergeant Ford testified about what they observed in the video, including their identification of Appellant and the exchange between Appellant and Ford.

Sergeant Dees, Sergeant Ford, and King also testified about the search of Ford prior to the transaction and about King's confirmation that Ford did not have any drugs in her possession at that time. There was also testimony from Sergeant Dees that Ford exchanged text messages, with an individual that Ford identified as Appellant, to set up a purchase of two eight-balls of cocaine on December 29 at the Bargain Town convenience store. Furthermore, Sergeant Dees testified that Appellant was the individual that arrived at the appointed place and time to meet with Ford and that the officers recovered approximately two eight-balls of cocaine from Ford after the transaction.

In this case, the jury could have rationally found that the corroborating evidence tended to connect Appellant to the delivery of the cocaine. *Malone*, 253 S.W.3d at 258–59. Therefore, we hold that the evidence is sufficient to support Appellant's conviction. We overrule Appellant's first issue.

*Jury Instruction on Corroboration of Covert Agent Testimony*

In his second issue, Appellant asserts that the trial court erred when it failed to instruct the jury that a confidential informant's testimony must be corroborated. When reviewing jury charge error, we first determine if error actually exists in the jury charge. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Johnson v. State*, 227 S.W.3d 180, 182 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). If we find error, we then determine whether it harmed the defendant. *Ngo*, 175 S.W.3d at 743. The degree of harm requiring reversal depends upon whether

7

an objection was raised at trial. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). If the defendant did not make a proper objection at trial, he or she "will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). As we addressed above, a defendant cannot be convicted based on the testimony of a confidential informant unless that testimony is corroborated by other evidence tending to connect the defendant to the crime. CRIM. PROC. art. 38.141(a). Failing to instruct the jury on this requirement is error. *Simmons v. State*, 205 S.W.3d 65, 77 (Tex. App.—Fort Worth 2006, no pet.).

Appellant acknowledges that there was no objection to the failure to include the confidential-informant-corroboration instruction. Accordingly, we review the record for egregious harm. *Almanza*, 686 S.W.2d at 171. Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In examining the record to determine whether jury charge error is egregious, the reviewing court should consider the entirety of the jury charge itself; the evidence, including the contested issues and weight of the probative evidence; the arguments of counsel; and any other relevant information revealed by the record of the trial as a whole. *Id.* Egregious harm is a difficult standard to meet, and such a determination must be made on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Neither party bears the burden on appeal to show harm or lack thereof under this standard. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

"Under the 'egregious harm standard,' the omission of a corroborating-evidence instruction may be rendered harmless if other evidence than the testimony of the accomplice witness or informant does exist that fulfills the purpose of the

instruction." *Simmons*, 205 S.W.3d at 77. "[T]he omission of an [informant] witness instruction is generally harmless unless the corroborating . . . evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (quoting *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)).

As we held in Appellant's first issue, there is sufficient corroborating evidence to support Ford's testimony. We do not find the corroborating evidence so unconvincing that it renders the State's overall case clearly and significantly less persuasive. *See id.* The omission of a jury instruction on the corroboration requirement likely had a very minimal effect because of the corroborating evidence in the record. We conclude that it did not affect the very basis of the case, deprive Appellant of a valuable right, or vitally affect a defensive theory. We overrule Appellant's second issue.

*Motion for New Trial Based on Evidence of Extraneous Offenses*

In his third issue, Appellant asserts that the trial court erred when it denied Appellant's motion for new trial based on the admission of two extraneous offenses during the guilt/innocence phase. The two extraneous offenses that Appellant complains about involve two prior drug buys between Ford and Appellant. One was alleged to have occurred on December 7, 2010, and the other was alleged to have occurred on December 13, 2010. We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002). When applying an abuse of discretion standard, we will not overturn a trial court's decision unless it falls outside the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

We conclude that the trial court did not abuse its discretion by overruling the motion for new trial based upon the admission of extraneous offense evidence. Appellant filed a pretrial motion alleging an entrapment defense. *See* TEX. PENAL CODE ANN. § 8.06 (West 2011). Additionally, his counsel asked the following question to Sergeant Dees during cross-examination: "Is it possible in your eyes to sort of encourage someone to, quote, unquote, 'be a seller' when that person isn't normally a seller, *trap them*, for example, into selling to them?" (emphasis added). In *England v. State*, 887 S.W.2d 902, 913–14 (Tex. Crim. App. 1994), the Texas Court of Criminal Appeals held that the entrapment defense has both subjective and objective elements. The subjective element requires evidence that "the accused himself was actually induced to commit the charged offense by the persuasiveness of the police conduct." *Id.* at 913 n.10. Evidence that a person has previously committed a crime is some evidence that a subsequent commission of the crime was not induced by police and is therefore admissible. *Id.* at 914. The trial court did not abuse its discretion in denying the motion for new trial in light of the admissibility of the extraneous offense evidence.

Moreover, a great deal of the extraneous offense evidence was admitted into evidence without objection. Although Appellant objected to evidence about the prior drug buys during Ford's direct examination, he did not object during Sergeant Dees's earlier testimony about the two prior drug buys. After Ford testified and during Sergeant Ford's cross-examination, Appellant's counsel played a portion of the video of the December 13 drug buy in an effort to discredit the video depiction of the charged drug buy. Even if there was error in admitting evidence of the extraneous offenses over Appellant's objections, it was harmless because it was cumulative of the same evidence to which Appellant did not object. *See* TEX. R. APP. P. 44.2(b). We overrule Appellant's third issue.

*Admissibility of Text Messages*

In his fourth issue, Appellant contends that the trial court erred when it admitted text messages over his authentication and hearsay objections. A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). If the ruling is within the zone of reasonable disagreement, an appellate court will not disturb it. *Id.* There is no abuse of discretion if the trial court "reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

Whether to admit evidence at trial is a preliminary question to be decided by the court. TEX. R. EVID. 104(a); *Tienda*, 358 S.W.3d at 637. Only relevant evidence is admissible. TEX. R. EVID. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence not properly authenticated is irrelevant, and authentication is a "condition precedent" to admissibility. TEX. R. EVID. 901(a); *Tienda*, 358 S.W.3d at 638.

A proponent of evidence is not required to "rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.— Austin 2012, no pet.). In performing its gate-keeping function under Rule 104, the trial court need not be persuaded that the proffered evidence is authentic. *Tienda*, 358 S.W.3d at 638. Instead, the question of whether an item of evidence is what the proponent claims it to be is a question for the factfinder. *Id.* The preliminary question for the trial court is to decide whether the proponent of the evidence has supplied sufficient facts to support a reasonable jury determination that the evidence is authentic. *Id.*; *see also Manuel v. State*, 357 S.W.3d 66, 74 (Tex.

App.—Tyler 2011, pet. ref'd) (stating "proponent must only produce sufficient evidence that a reasonable fact finder could properly find genuineness").

Authentication may be accomplished by several methods, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. TEX. R. EVID. 901. Rule 901 "does not erect a particularly high hurdle, and that hurdle may be cleared by circumstantial evidence." *Campbell*, 382 S.W.3d at 549. Printouts and pictures of emails, internet chat room conversations, and text messages have all been admitted into evidence when found to be sufficiently linked to the purported author so as to justify the submission to the jury for its ultimate determination of authenticity. *Tienda*, 358 S.W.3d at 639.

Ford testified that she sent and received text messages from Appellant to set up the drug buy on December 29, 2010. Ford testified that, while she was waiting at Bargain Town for Appellant, she sent text messages to him and asked where he was and when he was going to be there. Ford said that Appellant then texted her and said he was at the apartments across the street. She then walked over to where he was parked. The events surrounding the message sent to Ford indicate circumstantially that Appellant was the author of the text message. *See Tienda*, 358 S.W.3d at 641 ("Sometimes the purported sender has responded to an exchange of electronic communications in such a way as to indicate circumstantially that he was in fact the author of the particular communication, the authentication of which is in issue."). Although the picture of the text message alone may have been insufficient for authentication purposes, we conclude the evidence was admitted in such a way that, in combination with other evidence, a reasonable juror could have believed the text message was sent by Appellant.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter

asserted. TEX. R. EVID. 801(d). A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. TEX. R. EVID. 801(e)(2)(A). In this case, the text message offered against Appellant contained his own statement in his individual capacity. Consequently, the text message was not hearsay. Rather, because it constituted Appellant's own statement, it was properly admitted into evidence. *See id.*; *Hughes v. State*, 4 S.W.3d 1, 6 (Tex. Crim. App. 1999); *Lewis v. State*, 815 S.W.2d 560, 568 (Tex. Crim. App. 1991); *Lozano v. State*, No. 2-06-379-CR, 2007 WL 4216349, at *8 (Tex. App.—Fort Worth Nov. 29, 2007, no pet.) (mem. op., not designated for publication) (concluding text messages contained defendant's statements and were properly admitted as party admission). Accordingly, we conclude the trial court did not abuse its discretion when it admitted the text messages into evidence. We overrule Appellant's fourth issue.

### *This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
JUSTICE


March 20, 2015

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.