

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-16-00227-CR

---

ELIJAH DECOLE WOODS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 26908

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

While investigating illegal narcotics sales in Paris, Texas, Police Department Detectives Leigh Foreman and Josh Crawford recruited Lamont Young to act as a confidential informant in exchange for lenient treatment on a drug charge of his own. The detectives equipped Young with a vehicle, $800.00 in cash, and a buttonhole camera to wear in his shirt when buying drugs with the money supplied by the officers. Young was sent to "the Corner," an intersection north of downtown Paris known for frequent illegal drug activity. While the original target of Young's efforts was someone other than Elijah Decole Woods, when the original target did not cooperate, Young purchased drugs from Woods.

Woods was convicted of selling crack cocaine to Young. Woods' appeal claims that there was insufficient corroboration of Young's testimony and that Police Captain Tommy Moore's testimony was erroneously admitted as expert testimony on narcotics investigative procedures. We affirm Woods' conviction, because (1) sufficient evidence other than Young's testimony tends to connect Woods with the offense and (2) Woods preserved no error in the admission of Moore's expert testimony about narcotics investigations.

*(1)*      *Sufficient Evidence other than Young's Testimony Tends to Connect Woods with the Offense*

Woods attacks the sufficiency of the evidence to corroborate Young's testimony. The testimony of a cooperating individual or confidential informant alone is not enough to sustain a conviction, but the informant's testimony must be corroborated by other evidence. TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005). Corroboration, to be sufficient, need only "tend to connect" the accused with the crime. *Malone v. State*, 253 S.W.3d 253, 258 (Tex. Crim. App.

2

2008). Sufficiency of the evidence to corroborate an informant's testimony is gauged by "exclud[ing] the testimony of the covert agent from consideration and examin[ing] the remaining evidence (i.e., non-covert agent evidence) to determine whether there is enough evidence that tends to connect the defendant to the commission of the offense." *Id.* The fact that the informant served as the sponsoring witness for the video exhibit does not keep us from using the video footage as corroborating evidence, if it sufficiently connects Woods to the crime. *See Cook v. State*, 460 S.W.3d 703, 710 (Tex. App.—Eastland 2015, no pet.); *Cantelon v. State*, 85 S.W.3d 457, 459–62 (Tex. App.—Austin 2002, no pet.).

Young testified to the controlled drug buy, explaining that he was outfitted with a small camera in one of his shirt's buttonholes and that he was instructed to buy drugs from a certain individual other than Woods, who was the subject of an ongoing investigation. Detectives Foreman and Crawford gave Young the use of $800.00 in cash and a vehicle. The cash was photocopied to record the serial numbers. With the camera turned on and recording, Young drove to the Corner. Young approached the primary target of Foreman and Crawford's investigation, but was rebuffed. Woods approached Young and offered a sale, which they eventually negotiated and consummated. Young then returned to the awaiting detectives carrying the purchased drugs and the unspent cash. The video recording of the view from Young's buttonhole-camera was played for the jury with Young answering questions and offering narration about the events and conversations depicted in the video recording.

The video corresponds to Young's description of events at the Corner. The State stopped the video at various points for Young to comment or describe what was seen and asked Young

3

who was seen on the screen at 2:07:13 in the recording. Young answered, "Elijah Woods." The jury could compare Woods in the courtroom at trial with the man on the video. Still photos taken from the video were also admitted, with Young identifying Woods and another person (the original target of the investigation) as the individuals depicted in the photographs. While the actual exchange of money and drugs cannot be seen, as Young and Woods discussed prices, there was a sound like bills being counted or peeled off. Woods said he needed to cut or break up whatever it was they were discussing (presumably the drugs), and Young offered to retrieved from his truck the scales provided by investigators. Then Young moved to the truck, opened the door, and retrieved something. Finally, near the end of the transaction, Young said something that sounded like, "You ain't got no sack?" Young testified that, because Woods did not have a bag in which to place the drugs, Young dropped the crack cocaine in the vehicle's console. Crawford said he found the loose, unbagged drugs in the vehicle's seat.

The location of loose crack cocaine in the vehicle given by detectives to Young for this operation tends to connect Woods with the offense. Also, Young testified he purchased the drugs for $220.00 of the $800.00 provided him by the detectives. Exhibit 11 is a photocopy of $580.00, and Crawford said that cash was the money Young brought back after the drug transaction.[1] The jury could view the subject in the video and the still photographs generated from some of the video and compare them with Woods' appearance in the courtroom.

---

[1]Young, Crawford, and Foreman all testified or provided evidence (i.e., in the beginning of the video) that Young and the vehicle were searched before the operation, with no money or contraband found, and after the transaction, with the described drugs and less cash found.

Excluding Young's testimony, there is still evidence in the record tending to connect Woods with the offense of delivery of a controlled substance. There was evidence that Young was working at the behest of Paris detectives; that the detectives equipped Young with a covert camera, cash, and a vehicle; and that they instructed Young to buy crack cocaine, albeit from a person other than Woods. The video recorded by Young showed a person who could be compared to Woods in the courtroom. Young left the detectives with $800.00 cash and no drugs and returned with $580.00 and several grams of crack cocaine. All of the above is in addition to the testimony that Young had a drug history and had been recruited by officers to make a drug buy and that the location was a known place of drug activity. Per Young's testimony, the drugs were not in a baggy, but were loose inside the cabin of the truck given him by police. Sufficient corroboration tends to connect Woods with the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005); *Malone*, 253 S.W.3d at 258.

This point of error is overruled.

*(2)      Woods Preserved No Error in the Admission of Moore's Expert Testimony*

When the State presented testimony from Paris Police Captain Tommy Moore as an expert to describe narcotics investigation procedures, Woods objected that the State had failed to show Moore was properly qualified: "Your Honor, I don't think what he's testified [to] meets the [*Daubert*][2] qualifications and I'll object." Because Woods' objection was not specific enough to preserve any error, we overrule this point of error.

---

[2]*See Daubert v. Merrell Dow Pharmas., Inc*., 509 U.S. 579 (1993) (Federal Rule of Evidence 702 requires scientific expert testimony to be reliable and relevant).

5

To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). "An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error." *Scherl v. State*, 7 S.W.3d 650, 652 (Tex. App.—Texarkana 1999, pet. ref'd).

> As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Challenges to proffered expert testimony may attack three criteria: qualification, reliability, and relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). Before admitting expert testimony, the trial court must determine "(1) that the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) that the subject matter of the testimony is an appropriate one for expert testimony; and (3) that admitting the expert testimony will actually assist the fact-finder in deciding the case." *Alvarado v. State*, 912 S.W.2d 199, 215–16 (Tex. Crim. App. 1995). Woods only told the court he did not think the *Daubert* threshold had been crossed. He did not specify what element of qualification was lacking, whether he felt Moore had not been shown to be qualified, that the subject of Moore's testimony[3] was not

---

[3]Moore offered testimony about his twenty years' experience and training in law enforcement, almost all of which had focused on narcotics investigations. The State offered Moore "as an expert in the field of illegal manufacture,

6

appropriate for expert testimony, or that Moore's testimony would not assist the fact-finder.[4]

Woods' lack of a specific objection failed to preserve this claim for appellate review. *See also Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd) (trial objection on *Daubert* and hearsay grounds insufficient to preserve appellate challenge to witness' reliability).

We affirm the trial court's judgment and sentence.[5]


Josh R. Morriss, III
Chief Justice


Date Submitted:     July 14, 2017
Date Decided:       August 16, 2017

Do Not Publish

---

[4] possession, sale and/or distribution of controlled substances."   That was the proffer to which Woods objected.  Later, Moore testified to the use of informants and what might constitute corroborating evidence.  Woods lodged no objection to that line of testimony.  Woods' appellate brief argues this impermissibly lessened the State's burden of proof.  He made no such objection to the trial court, thus waiving that claim.

[4] In fact, when the trial court overruled Woods' general objection, he added, "[W]hatever he's got to testify to is going to be helpful to the trier of fact."   However, Woods' appellate briefing attacks Moore's qualification to testify as an expert and the propriety or lack thereof in offering what Woods characterizes as legal opinions.  Even if we deemed Woods to have sufficiently preserved his complaint for appeal, his appellate argument—that the witness was not qualified to offer legal conclusions—does not comport with his broad, general trial objection and thus could not be heard.  A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).   Finally, when Moore began to answer questions about what would constitute corroboration of an informant's testimony, Woods lodged no objection.

[5] Under the heading Issues Presented, near the beginning of his appellate brief, Woods claims he will present a third point of error alleging ineffective assistance of counsel, but he only briefed and argued the two points addressed supra; we do not consider any claim of ineffective assistance of counsel as appellant did not brief it. *See* TEX. R. APP. P. 38.1.

7