

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00253-CR
### NO. 02-17-00254-CR

ERIC JACKSON                                                 APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NOS. 1463959D, 1490111D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Eric Jackson appeals from his convictions for burglary and three counts of aggravated sexual assault of a child, arguing that the trial court abused its discretion by admitting multiple text messages from the sexual-assault complainant's phone. Because we find no abuse of discretion, we affirm the trial court's judgments.

---

[1]*See* Tex. R. App. P. 47.4.

On May 17, 2015, Carrie Green woke to find that someone had broken a window in her thirteen-year-old daughter's bedroom and stolen her daughter's computer.[2] Carrie called the police, who found fingerprint- and blood-evidence on the broken window.

One month later, Carrie's daughter Lacey told Carrie that "a boy made her have sex with him and that she was afraid." Lacey identified him to Carrie as Jackson and stated that "he was the one that broke in and that he was the one that stole her computer." Lacey had met Jackson at a park near her home in the spring of 2015 and their relationship quickly progressed to multiple instances of unprotected vaginal and oral sex. Jackson was twenty-five at the time. The night of the burglary, Lacey had told Jackson that she "would not like to talk to him anymore." Jackson then appeared at Lacey's bedroom window, asking her to talk to him and causing her to leave her bedroom to go into the living room until the next morning. When she returned, her bedroom window was broken and her computer was gone.

Carrie called the police, and Detective Dennis Hutchins interviewed Lacey and completed a forensic examination of Lacey's phone. The investigation stalled, and it was later discovered that Hutchins had not been "doing his job" since 2004, leading to his termination from the police department. As a result, Hutchins's cases were reassigned to other detectives in June 2016. The

---

[2]We use fictitious names to refer to the minor and her family members. *See* Tex. R. App. P. 9.10; *see also* Tex. R. App. P. 9.8 cmt.

detective who was assigned Lacey's case, Detective Casey Allen, discovered that the video of Lacey's forensic interview and her medical records had been lost. Allen arranged for Lacey to be re-interviewed, and Carrie forwarded Lacey's medical records to Allen. Hutchins had, however, completed a download of the contents of Lacey's phone, including her text messages. After Jackson's arrest for the aggravated sexual assaults of Lacey, the fingerprint- and blood-evidence from Lacey's bedroom window were identified as belonging to Jackson.

At Jackson's consolidated trial, the State offered into evidence numerous text messages between Lacey's phone number—972-310-XXXX—to two phone numbers Lacey testified were numbers she used to communicate with Jackson— 817-522-XXXX and 304-240-XXXX. Jackson objected to their admission, arguing that the 817 and 304 numbers had not been sufficiently identified as belonging to him and that the texts were not relevant. The trial court admitted the texts, concluding that whether the 817 and 304 numbers had been sufficiently tied to Jackson was a fact issue for the jury to resolve. The jury found Jackson guilty of three counts of aggravated sexual assault and of burglary and assessed his punishment at forty-eight years' confinement for each assault and five years' confinement for burglary.[3] Now on appeal, Jackson argues that the admission of the texts was an abuse of discretion because they were irrelevant and not sufficiently authenticated. *See* Tex. R. Evid. 401–02, 901(a). We review the

---

[3]The jury found Jackson not guilty of continuous sexual abuse of a young child.

admission of the text-message evidence over Jackson's objections for an abuse of discretion, which may be found only if the trial court's admissibility ruling fell outside the zone of reasonable disagreement. *See Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Gardner v. State*, No. 02-14-00459-CR, 2015 WL 4652718, at *1 (Tex. App.—Fort Worth Aug. 6, 2015, pet. ref'd) (mem. op., not designated for publication).

Jackson's authentication and relevance objections are two sides of the same coin. Authentication arises when the relevancy of the evidence depends on its connection to a particular person. *See* Tex. R. Evid. 901(a); *Tienda*, 358 S.W.3d at 637–39; *Campbell v. State*, 382 S.W.3d 545, 548–49 (Tex. App.—Austin 2012, no pet.). Evidence has no relevance if it is not authentically what the proponent claims it to be. *Tienda*, 358 S.W.3d at 638. Our discussion of Jackson's authentication and relevance arguments therefore is interrelated. *See, e.g., Gardner*, 2015 WL 4652718, at *2. Indeed, Jackson's sole relevance argument in his brief is dependent on authenticity: "Without being properly authenticated, the messages were irrelevant to any fact at issue . . . ."

Authentication is a condition precedent to admissibility, and the trial court's determination of admissibility based on relevance is a preliminary one. *See* Tex. R. Evid. 104(a), 401–02, 901(a); *Tienda*, 358 S.W.3d at 638. Whether a cell-phone number may be associated with a particular user can be problematic because "cell phones can be purloined." *Butler*, 459 S.W.3d at 601. Thus,

4

evidence that a cell-phone number is associated with a purported sender, standing alone, may be too attenuated to satisfy its authenticity. *Id.* In any event, the test for authenticity, and thus relevance, is not stringent and requires only an initial showing that would be sufficient to support a finding that the matter in question is what its proponent claims. *Campbell*, 382 S.W.3d at 549; *see* Tex. R. Evid. 901(a). The ultimate question of whether an item of evidence is what the proponent claims is a question for the fact-finder, rendering the trial court's preliminary inquiry a simple one—whether the State supplied sufficient facts to support a reasonable determination by the jury that the evidence is authentic. *Tienda*, 358 S.W.3d at 638; *see also Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd) ("The proponent must only produce sufficient evidence [by which] a reasonable fact finder could properly find genuineness.").

Where a sponsoring witness testifies to an association between a cell-phone number and a purported author of a text from that number, other surrounding circumstances may "bridge the logical gap" to allow an inference that the purported author sent the text. *Butler*, 459 S.W.3d at 602; *see also* Tex. R. Evid. 901(b)(1), (4). Such bridging circumstances include the message's "appearance, contents, substance, internal patterns, or other distinctive characteristics." *Butler*, 459 S.W.3d at 602. Accordingly, a trial court's initial determination of whether evidence has been sufficiently authenticated to be admissible is dependent on the facts and circumstances of each case. *Tienda*, 358 S.W.3d at 639.

Lacey testified to more than just the fact that she used the 817 and 304 numbers to communicate with Jackson. Not only had she saved the 817 number as "Eric Jackson" in her phone, she testified that the texts at issue were sent by Jackson and that she remembered the conversations. The forensic examiner confirmed that Lacey had the 817 number saved as "Eric Jackson" in her phone. Lacey stated that Jackson frequently would text her when to be at a stop sign by her home, where he would meet her. At one meeting, Lacey testified that Jackson walked her into the woods and forced her to have sex. Several of the texts at issue referred to meeting at the stop sign and to having sex in the woods. Lacey also testified to Jackson's singular vernacular—for example, "mines" instead of mine—which was used in texts from the 304 and 817 numbers. In text exchanges with the 304 number, Lacey asked for her "laptop back," and the 304 number directed Lacey to "come get your computer."

We conclude that this evidence sufficiently authenticated the texts and their connection to Jackson. Lacey's testimony about events occurring during her relationship with Jackson, which were reflected in the texts, provided contextual evidence that was sufficient to establish as a preliminary matter the authenticity of the texts. *See Butler*, 459 S.W.3d at 604; *Tienda*, 358 S.W.3d at 641; *Norris v. State*, No. 06-16-00150-CR, 2017 WL 1536198, at *2 (Tex. App.—Texarkana Apr. 27, 2017, pet. ref'd) (mem. op., not designated for publication); *Tyler v. State*, No. 05-15-00354-CR, 2016 WL 280032, at *2 (Tex. App.—Dallas Jan. 22, 2016, no pet.) (mem. op., not designated for publication); *Gardner*,

6

2015 WL 4652718, at *2; *Aekins v. State*, No. 04-13-00064-CR, 2013 WL 5948188, at *5–6 (Tex. App.—San Antonio Nov. 6, 2013) (mem. op., not designated for publication), *aff'd on other grounds*, 447 S.W.3d 270 (Tex. Crim. App. 2014); *Manuel*, 357 S.W.3d at 77–82. Certainly, a reasonable jury could have determined that the texts were sent by Jackson. *See Cook v. State*, 460 S.W.3d 703, 713 (Tex. App.—Eastland 2015, no pet.). Because the evidence was sufficiently authenticated such that it could be admitted to the jury, it was relevant to an issue in the case. *See Gardner*, 2015 WL 4652718, at *2. We overrule Jackson's issue.

Because the trial court did not abuse its discretion by initially determining that the State proffered sufficient identifying evidence to authenticate the texts were connected to Jackson, we affirm the trial court's judgments. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: MEIER, GABRIEL, and KERR, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 26, 2018

7