**Opinion filed July 8, 2010**



In The

# Eleventh Court of Appeals

_____

## No. 11-08-00307-CR
_____

## CHRISTOPHER LAMONT TAYLOR, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 10512**

### O P I N I O N

The jury convicted Christopher Lamont Taylor of possession with intent to deliver a controlled substance and assessed his punishment at eighty years confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000. In his one issue on appeal, appellant argues that the evidence was legally insufficient to support his conviction. Specifically, he asserts that the testimony of the confidential informant was not corroborated by other evidence tending to connect appellant with the offense as required by TEX. CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005) (known as the "Tulia Law"). We reverse and render a judgment of acquittal.

*Background Facts*

The confidential informant, Brandon Thomas Pritchett, had been arrested in Nolan County for possession of cocaine. While in the county jail, Pritchett was contacted by Investigator David

McDonald of the Nolan County Sheriff's Department. Pritchett agreed to buy drugs in exchange for an agreement that, if he made three cases, he would not be prosecuted for his offense.

On the day in question, Pritchett met with Investigator McDonald and another investigator, Leo Adrian Huddleston, at a communications tower on the east side of Sweetwater. Investigator Huddleston had at one time been employed by the Drug Task Force in Abilene but had retired from that position. The officers searched Pritchett, fitted him with a wire electronic recording and transmitting device, and gave him $200 to purchase cocaine.

Investigator Huddleston was the first witness. He testified that he drove Pritchett to the corner of Fisher and Alabama, which was about one block from the target residence of 801 Haskell where the officers thought that Pritchett might find appellant. He dropped Pritchett off shortly after 4:00 p.m. Investigator Huddleston could see two people in the yard of the Haskell Street house, but he did not know who they were. Investigator Huddleston testified that, after he dropped Pritchett off, he subsequently "was trying to stay away from the house." He acknowledged that he never identified anyone who was at the house and that only Investigator McDonald was able to hear from the wire transmitter on Pritchett. He testified that he never saw appellant or Pritchett go in or come out of the house. He acknowledged that no law enforcement officer conducted any surveillance of the house.

Investigator Huddleston said that Investigator McDonald called him on his cell phone when the drug transaction was over. He picked Pritchett up a couple of blocks north of the corner where he had dropped Pritchett off. Pritchett gave him ten clear zip lock packages with a white powder in them, and then they drove out to the communications tower to meet Investigator McDonald.

Pritchett was the second witness. When he walked up to the front yard of the house at 801 Haskell Street, there were people in the front yard, but he did not remember how many. He said that appellant and a female named Crystal Ann were there. They were arguing. Appellant opened the door, and Pritchett went into the living room. He asked appellant "if he had any work." Pritchett explained to the jury that "work" meant drugs like cocaine. Appellant asked Pritchett if he was wired and then patted him down. Pritchett thought that appellant might find the wire, and he was scared. Pritchett testified that appellant then gave him the "work" and that he gave appellant the $200 for the ten bags of coke.

Pritchett testified that he had listened to the recording that was made that day. He listened to it the day before the trial. Although the recording was not played while Pritchett was on the

witness stand and he did not identify the recording, he testified that the voices on the recording he listened to belonged to him, appellant, Crystal Ann, Investigator Huddleston, and Investigator McDonald.

Pritchett testified that he knew appellant did not live at 801 Haskell Street, that appellant lived in Lubbock, and that the house belonged to appellant's father. On cross-examination, Pritchett was asked:

> Q: Is there any other way besides your testimony, besides you telling this story, is there anybody at [sic] any other way to tell whose voice is whose on that tape?
>
> A: No, I guess not.

Pritchett never identified any particular recording in court. He was never asked about, nor was he shown, State's Exhibit No. 3, and he did not identify any voices in court except for his statement in reference to a tape that he had heard the day before.

Investigator McDonald testified that he did not see appellant that day and did not see Pritchett walk up to the house or walk away from the house. He stated that his role was to listen to the recording device; he was not assigned to watch Pritchett go to the house. He testified that he thoroughly searched Pritchett when they met the first time at the communications tower. Investigator McDonald said he was in a separate undercover vehicle and parked at a "covert location" in the 1200 block of Alabama Street, just southeast of Jones Park in Sweetwater. He stated that they targeted 801 Haskell Street because they believed appellant would be there. But he did not say why the officers believed that appellant might be at that location.

Investigator McDonald identified State's Exhibit No. 3 as the Sony disk that was used to transmit and record the conversations that day. He confirmed that he had listened to the recording more than once and admitted that the recording was somewhat distorted. He could identify the voices of Pritchett and Investigator Huddleston, but none of the other voices on the recording. He did hear Pritchett address someone as "Chris" several times. Investigator McDonald said that, when they met back at the communications tower, he was given the ten packets from Investigator Huddleston; that he stored them in the Nolan County Sheriff's Office property room; and that he then subsequently delivered them to the DPS laboratory in Abilene for analysis.

The last witness for the State was William Chandley, a chemist with the Department of Public Safety in Abilene. He testified that the ten packets contained 3.44 grams of cocaine.

3

## The Recording

The jury listened to the recording during Investigator McDonald's testimony. The recording is of extremely poor quality. Much of the recording is unintelligible. Without the testimony of the confidential informant Pritchett, it would be impossible to understand from the recording what was taking place other than two or more people arguing. There are at least five voices on the recording. The name "Chris" is stated five times on the recording according to the State's transcription. From Pritchett's testimony, we understand that he said the name "Chris" once or twice and that other unidentified people said the name "Chris" at other times.

Because the State also recognized the extremely poor quality of the recording, it provided to the jury a transcript of the recording. Whoever typed the transcript also could not understand a substantial portion of the recording. From the transcript, it appeared that there was an argument between a woman and someone named Chris. The transcript noted that a woman was screaming and then an unknown man said, "Quit Chris." The next mention of "Chris" is Pritchett asking, "What's up Chris?" There is more arguing, and then one voice said, "Quit Chris, he's gonna hurt you girl," and another voice said, "Chris your [sic] gonna hurt this girl." But the transcript does not reveal that a drug transaction took place, only that there was a mention of $200.

Although the transcript does not mention "work," we did hear one voice ask about "work" on the recording. Also, that same voice said, "Thanks Chris," near the end of the recording. Investigator McDonald did testify that Pritchett referred to someone as "Chris," that Pritchett used the term "work" for cocaine, and that there was a reference to $200 twice or possibly three times on the recording.

## Standard of Review

In his sole issue on appeal, appellant argues that the evidence was legally insufficient to support his conviction because it was based on the testimony of a confidential informant and the State presented no other evidence tending to connect appellant with the cocaine purchase. Article 38.141 provides in part:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

4

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

The Texas Court of Criminal Appeals in *Malone v. State*, 253 S.W.3d 253 (Tex. Crim. App. 2008), held that the standard for evaluating sufficiency of the evidence for corroboration under the accomplice-witness rule applies when evaluating sufficiency of the evidence for corroboration under the covert agent rule. Thus, we must exclude the testimony of the confidential informant from consideration and examine the remaining evidence to determine whether there is evidence that tends to connect appellant to the commission of the offense. 253 S.W.3d at 258.

The corroborating evidence does not have to directly link appellant to the crime or establish his guilt beyond a reasonable doubt. *Smith v. State*, 211 S.W.3d 476, 478 (Tex. App.—Amarillo 2006, no pet.). The corroborating evidence need only connect appellant to the offense. The review of the corroborating evidence is done in the light most favorable to the verdict. *Smith*, 211 S.W.3d at 478.

As stated in *Young v. State*, 95 S.W.3d 448, 451 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd), confidential informants may have incentives to create criminal cases or shade their testimony in favor of the State in the hope that they will be rewarded with greater leniency later on. Here, Pritchett had an agreement with the prosecutor that, if Pritchett made three cases through "buy busts," Pritchett would not be prosecuted for his possession of cocaine.

*Analysis*

The non-covert agent evidence is limited. Investigator McDonald and Investigator Huddleston searched Pritchett prior to the transaction to ensure that he did not have any drugs before his contact with appellant. They provided him with $200 and a wire electronic transmitter that also records conversations. Neither officer saw appellant that day, nor did they see Pritchett enter into and leave the house at 801 Haskell Street. Investigator Huddleston stated that there was no surveillance of the house by law enforcement unless Investigator McDonald did it. But Investigator McDonald testified that he was at a remote location and that he was not assigned to watch the house. He testified that his role was to listen, from a covert position, to the conversations involving Pritchett.

The quality of the recording is extremely poor. It reflects that Pritchett said, "What's up Chris?" to someone; that he asked, "You got some work, Dog?"; and that later he said, "I really appreciate it Chris." Except for confidential informant Pritchett's testimony, we don't know to

5

whom he was talking when he said the name of Chris. There is no corroborating evidence that appellant was that "Chris."

Pritchett testified that the house at 801 Haskell Street belonged to appellant's father and that appellant lived in Lubbock. However, except for his testimony, there is no evidence connecting appellant to the house. The officers testified that they expected appellant to be at that house, but they gave no reason for that statement. There was no testimony concerning why the officers thought that appellant might be dealing in drugs.

In *Malone*, there were two confidential informants, Jason Harris and Christopher Olachia, who were to make the controlled buy of crack cocaine from Malone. Investigator Jay Grimes followed them in an unmarked patrol car, watching them the entire way. Investigator Grimes watched Harris and Olachia join Malone as he helped a woman free her car from the mud in Malone's driveway. He also watched Malone, Harris, and Olachia enter Malone's house with Malone's permission. As in the present case, there was no identification of the voices on the tape recording except the description of what occurred by the confidential informant. But even without that testimony, the jurors could rationally connect the voices on the recording to the corresponding persons.

Investigator Grimes identified Malone and placed him in front of his house helping an unnamed woman get her car out of the mud. Mindful of the entry of Malone's voice on the tape at that point, the jurors could follow the voices on the tape. They could identify Malone as the person who told Harris and Olachia to "come in and wait" while he "put it together" and who later told Olachia, "Y'all going to be, 'Cooked to customer satisfaction.'" Thus, the *Malone* court held that the corroborating evidence sufficiently tended to connect Malone to the delivery of the crack cocaine.

The record before us does not reflect that either officer knew appellant. Even if one of them did, neither officer saw appellant that day. Neither officer saw Pritchett approach or leave the house at 801 Haskell Street. The facts in this case are very similar to those in *Young*, where the court held that the evidence was legally insufficient to sustain the defendant's conviction. 95 S.W.3d 448.

In *Young*, the informant was searched and outfitted with a recording device, just as in this case. The officer stopped following the informant when he turned to go to a residence on a county road where the officers believed the defendant lived. It was undisputed that the confidential informant went alone to a house to make the cocaine transaction. No officer saw

where the informant went that day. The informant identified the defendant as the person who sold him the cocaine he brought back to the officer. The informant identified the defendant as one of the voices on the tape recording, but no one else identified the defendant's voice on the tape. The court indicated that the jury was able to listen to an audio recording of a possible cocaine transaction but that, without the informant's identification of the defendant's voice, there were only unidentified voices on the recording. *Id.*

In *Young*, as here, the officers gave the confidential informant money to purchase cocaine from the defendant. The officers believed that the confidential informant would find the defendant at a residence in the area where they had followed the confidential informant just as the officers here believed that appellant would be at 801 Haskell Street. As in this case, after the confidential informant returned, he identified the defendant as being the person who sold him the cocaine, and the defendant was subsequently arrested. In *Young*, as here, no one except the confidential informant identified the defendant's voice on the tape. *Young*, 95 S.W.3d at 450.

Without Pritchett's testimony, there is no evidence that appellant was the "Chris" at 801 Haskell Street that day. Without Pritchett's testimony, we would not know that he went to 801 Haskell Street or how appellant was connected to that house. The same was true in *Young*: no witness except the confidential informant testified that the confidential informant entered the defendant's house or that a cocaine transaction took place there. *Young*, 95 S.W.3d at 451-52.

We hold that the evidence was legally insufficient to sustain appellant's conviction. Appellant's issue is sustained.

### *This Court's Ruling*

We reverse the judgment of the trial court and render a judgment of acquittal.


TERRY McCALL
JUSTICE


July 8, 2010

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: McCall, J.,
Strange, J., and Boyd, S.J.[1]

---

[1]John T. Boyd, Retired Chief Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.