**Opinion filed May 17, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00148-CR

_____

### MOZELLE KING JAMES, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 9555**

## MEMORANDUM OPINION

The jury convicted Mozelle King James of delivery of less than one gram of cocaine in a drug-free zone. The jury found both enhancement allegations to be true and assessed appellant's punishment at confinement for seventy-five years. The trial court ordered that the sentence run consecutively to appellant's ten-year concurrent sentences imposed in Cause Numbers 8908 and 8909 in 2005.[1] We affirm.

---

[1]The record does not reflect the date that appellant was placed on parole for the earlier offenses or the date that her parole was revoked.

*Introduction*

In March 2009, Curtis Bryant was working as a cooperating individual with the Snyder Police Department in connection with its undercover investigations of narcotics sales in the area. The indictment alleged that, on or about March 27, 2009, appellant delivered less than one gram of cocaine to Bryant. The indictment further alleged that appellant committed the offense within 1,000 feet of real property owned by the Snyder Independent School District.

*Issues on Appeal*

Appellant presents two issues for review. In her first issue, appellant argues that the evidence was legally insufficient to support her conviction. Specifically, she contends that the testimony of Bryant, the cooperating individual, was not sufficiently corroborated to sustain her conviction. In her second issue, appellant contends that the trial court erred by ordering the sentence in this cause to run consecutively to the sentences imposed in the prior causes because the plea agreement in the prior causes provided that the sentences in those causes would run concurrently with any other sentence. Thus, appellant asserts that the sentence in this cause violates the terms of the plea agreement in the prior causes.

*The Evidence at Trial*

The cooperating individual, Bryant, testified that he had used cocaine and methamphetamine in the past and that he was familiar with who sold drugs in Snyder. In January 2009, Bryant signed an agreement in which he agreed to work as a cooperating individual with the Snyder Police Department in connection with its undercover investigations of deliveries of controlled substances. Bryant testified that the contract required him "[t]o purchase illegal narcotics for the police officers that decided to run the sting, wearing a microphone." Patrol Sergeant Drew Price of the Snyder Police Department signed the agreement as the police officer supervising Bryant's cooperation.

Bryant testified that, on March 27, 2009, Sergeant Price contacted him for the purpose of getting him to make a drug buy. Bryant said that he and Sergeant Price met at an agreed location, where Sergeant Price thoroughly searched him and his car. At that time, Bryant planned to buy cocaine from a man named Arthur Harris at Harris's house. Bryant said that Sergeant Price gave him a tape recorder with a microphone. He said that the tape recorder was placed in a pocket inside his jacket and that the microphone was attached to the zipper inside his jacket. The tape recorder was turned on and remained on until Bryant had a subsequent meeting

with Sergeant Price. The State introduced a copy of the audio recording (in DVD format) into evidence. The DVD was played for the jury, and we have listened to the recording in its entirety.

Bryant got into his car and drove to Harris's house. Bryant knocked on the door of Harris's house. A woman answered the door and told him that Harris was not there. Bryant's conversation with the woman is confirmed on the audio recording. Bryant testified that he called Sergeant Price to find out whether Sergeant Price wanted him "to try somewhere else." Bryant said that Sergeant Price told him that it was up to him. Bryant told Sergeant Price that he would go to appellant's house.

Bryant testified that appellant lived at 3208 Avenue L in Snyder. Bryant said that he knocked on appellant's door and that appellant let him inside the house. He said that appellant asked him what he wanted and that he told her he wanted a "20." During his testimony, Bryant explained that "20" referred to the price of the size of cocaine rock he wanted to buy from appellant. Bryant testified that appellant went to the back of the house and then came back with a "20" rock of cocaine. Bryant said that appellant handed him the cocaine, which was inside a sandwich bag. During his testimony, Bryant identified appellant's voice on the audio recording.

Bryant left appellant's house. Bryant said that he met with Sergeant Price at a predetermined location. Bryant testified that he told Sergeant Price that the cocaine was in a cup holder inside his car. Bryant said that Sergeant Price searched him and his car and that Sergeant Price also retrieved the tape recorder and microphone.

Sergeant Price testified that Bryant was working as a cooperating individual on March 27, 2009, and that Bryant had made undercover buys as a cooperating individual before March 27, 2009. Sergeant Price said that he called Bryant on March 27, 2009, and that he and Bryant then met at a predetermined location. At the meeting, Bryant said that he could make a buy at Harris's house. Sergeant Price testified that he thoroughly searched Bryant and his car to make sure that Bryant was not in possession of narcotics. Sergeant Price said that he gave Bryant a $20 bill to purchase cocaine and that he also gave Bryant a recording device.

Bryant drove to Harris's house. Sergeant Price followed Bryant to Harris's house in an undercover vehicle. Sergeant Price said that he saw Bryant's vehicle the entire time that Bryant was traveling to Harris's house. Bryant determined that Harris was not at home, called Sergeant Price, and then went to appellant's house. The audio recording confirmed that Bryant made this phone call to Sergeant Price. Sergeant Price testified that he knew appellant and that he knew

3

appellant lived at 3208 Avenue L. Sergeant Price followed Bryant to appellant's house. Sergeant Price also said that he saw Bryant's vehicle the entire time that Bryant was traveling to appellant's house, that he saw Bryant enter appellant's house, and that he saw Bryant come out of appellant's house. The audio recording indicates that Bryant was at appellant's house for about two minutes.

Sergeant Price testified that, after Bryant left appellant's house, he and Bryant met at the location of their previous meeting. The audio recording establishes that it took Bryant about five minutes to drive from appellant's house to the meeting location and that he did not make any stops on the way to the meeting. Sergeant Price testified that, during the meeting, Bryant told him that the cocaine was inside Bryant's car. Sergeant Price retrieved the substance, which he said was a crack rock, from Bryant's car. He said that the crack rock was inside a small bag when he retrieved it. He put the small bag containing the crack rock into a Ziplock bag and then returned to his office. Sergeant Price testified that the crack rock was tested at the Texas Department of Public Safety Crime Lab in Midland. Testing of the substance (crack rock) at the DPS Crime Lab showed that the substance weighed 0.20 grams and contained cocaine.

Sergeant Price testified that he had listened to the audio recording of the incident. He said that he knew appellant's voice when he heard it and that he recognized her voice on the recording. Sergeant Price also testified that appellant's house was about 277.7 feet away from Travis Field. Sergeant Price said that the Snyder Independent School District owned Travis Park.

*Corroboration of Cooperating Individual's Testimony*

Appellant states in her brief that, "for all practical purposes, the role of the confidential informant [Bryant] was akin to that of an accomplice." Appellant relies on Article 38.14 of the Code of Criminal Procedure for the proposition that "a conviction cannot be had upon the uncorroborated testimony of an accomplice witness." *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). "An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state." *Brown v. State*, 270 S.W.3d 564, 567 (Tex. Crim. App. 2008). In this case, the evidence showed that Bryant was not an accomplice but was instead acting as a cooperating individual with the police. However, this distinction does not change the standard of review that applies to an analysis of appellant's first issue.

4

Article 38.141 of the Code of Criminal Procedure establishes the covert-agent rule, which states as follows:

> (a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

> (b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.141(a)–(b) (West 2005). The standard for evaluating the sufficiency of the corroboration of the testimony of a covert witness, such as a cooperating individual, is the same as that used for evaluating the sufficiency of the corroboration of the testimony of an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 256–58 (Tex. Crim. App. 2008). Thus, when weighing the sufficiency of corroborating evidence under Article 38.141(a), we must exclude the testimony of the covert agent from consideration and examine the remaining evidence to determine whether there is evidence that tends to connect the defendant to the commission of the offense. *Malone*, 253 S.W.3d at 258. The tends-to-connect standard does not present a high threshold. *Randall v. State*, 218 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Cantelon v. State*, 85 S.W.3d 457, 461 (Tex. App.—Austin 2002, no pet.).

Standing alone, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt. *Malone*, 253 S.W.3d at 257. To be sufficient, the corroborating evidence must show more than just the "mere presence" of the defendant at or near the scene of the crime. *Id.* However, the corroborating evidence does not have to directly link the defendant to the crime. *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd); *Smith v. State*, 211 S.W.3d 476, 478 (Tex. App.—Amarillo 2006, no pet.). Instead, the corroborating evidence need only tend to connect the defendant to the offense. *Malone*, 253 S.W.3d at 258–59. We review the corroborating evidence in the light most favorable to the verdict. *Taylor*, 328 S.W.3d at 578; *Smith*, 211 S.W.3d at 478.

*Analysis*

Applying the above standard of review, we will review the corroborating evidence in the light most favorable to the verdict. During his testimony, Sergeant Price confirmed that Bryant was working with the police as a cooperating individual. Sergeant Price said that, on March 27, 2009, he and Bryant met before Bryant went to appellant's house. During that meeting, Sergeant Price thoroughly searched Bryant and his vehicle to make sure that Bryant did not have any illegal drugs. Sergeant Price gave Bryant a recording device and also a $20 bill for the purchase of cocaine. Sergeant Price followed Bryant to Harris's house and, later, to appellant's house. Bryant's vehicle was in Sergeant Price's view during the trips to Harris's house and appellant's house. Sergeant Price knew appellant, and he also knew where she lived. Sergeant Price testified that he saw Bryant enter and exit appellant's house. After Bryant left appellant's house, Sergeant Price and Bryant met at the location of their previous meeting. Bryant told Sergeant Price that the cocaine was in Bryant's car. Sergeant Price said that he retrieved the cocaine and placed it in a Ziplock bag. Sergeant Price knew appellant's voice, and he recognized her voice on the audio recording of the incident.

Sergeant Price's testimony and the audio recording strongly corroborated Bryant's testimony. Based on Sergeant Price's testimony, the jury could have rationally found that the corroborating evidence tended to connect appellant to the delivery of the cocaine. *Malone*, 253 S.W.3d at 258–59.

In *Taylor*, we held that the corroborating, non-covert agent evidence did not tend to connect the appellant to the commission of the offense. In that case, the covert agent testified that he purchased cocaine from the appellant at the appellant's father's house. *Id.* at 576, 578. However, in *Taylor*, no police officer watched the covert agent go to the subject house. *Id.* at 578. Therefore, no officer saw the covert agent enter or exit the house. Additionally, in *Taylor*, no evidence other than the testimony of the covert agent connected the appellant to the house where the covert agent said he bought the cocaine. *Id.* For example, the State did not present corroborating evidence that the appellant's father owned the house. Finally, while there was an audio recording in *Taylor*, no one except the covert agent identified the appellant's voice as being on the recording. *Id.* at 579. Thus, *Taylor* is easily distinguishable from the instant case.

6

In this case, the corroborating evidence tended to connect appellant to the commission of the offense. Therefore, we hold that the evidence is legally sufficient to support appellant's conviction. Appellant's first issue is overruled.

*Appellant's Sentence*

On May 17, 2005, in Cause Nos. 8908 and 8909, appellant was convicted for two offenses of delivery of a controlled substance in a drug-free zone. The State introduced copies of the judgments in these causes into evidence during the punishment phase of appellant's trial. The judgments indicate that appellant and the State entered into a plea agreement in those cases. The judgments also indicate that, pursuant to the terms of the plea agreement, the trial court sentenced appellant to confinement for ten years. The judgments in both causes provided that "**SENTENCE IS CONCURRENT WITH ANY OTHER SENTENCE UNLESS OTHERWISE SPECIFIED**."

At the sentencing hearing in this case, appellant's counsel, when discussing the concurrent sentences in Cause Nos. 8908 and 8909, stated that, "[o]bviously, that was part of the plea bargain agreement." In her second appellate issue, appellant contends that, because the plea agreement in the earlier causes provided that the sentences would run concurrently with any other sentence, the trial court was required in this cause to order her seventy-five year sentence to run concurrently with the sentences in the earlier causes. Therefore, appellant contends that the trial court abused its discretion by ordering that appellant's seventy-five year sentence run consecutively to the earlier sentences.

Appellant's second issue is based on the alleged terms of the plea agreement in the prior causes. However, appellant did not introduce copies of the plea agreement into evidence in this cause. We cannot consider evidence that was not introduced into the record. *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004); *Lewis v. State*, 504 S.W.2d 900, 904 (Tex. Crim. App. 1974). In the absence of evidence of the terms of the plea agreement, appellant cannot succeed on a claim that the trial court's sentence in this cause violated the terms of the plea agreement. Additionally, assuming that the prior plea agreement provided that the sentences would run concurrently with any other sentence, appellant has not shown how the earlier plea agreement could apply to a future sentence for a felony she committed almost four years after entering into the plea agreement. It seems unlikely that the State would have agreed in the prior causes that a sentence for a future offense would run concurrently with the sentences. It also

7

seems unlikely that the trial court would have approved such an agreement. Appellant's second issue is overruled.

*This Court's Ruling*

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


May 17, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.