IN THE TEXAS COURT OF CRIMINAL APPEALS

NOS. WR-81,750-02 AND WR-81,750-03

81,750-02,03

EXPARTE GRAYLON TARAYE IVERY
(APPLICANT)

RECEIVED IN
COURT OF CRIMINAL APPEALS

AUG 10 2015

Abel Acosta, Clerk

## APPLICANT'S RESPONSE TO COURT ORDER

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW GRAYLON TARAYE IVERY the APPLICANT IN the Above STYLED AND numbeed case RespectFully Files This Responce IN support of the Courts Order the APPLICANT would Show As Follows.

The APPLICANTS CONTENDS that the TRIAL COUNSEL Rendered himself INeffective AssisTance because counsel did NOT INVesTigate or File A MOTiON FOR A Hearing Pursuant TO FRANKS V DelAWARE 438 US. 154 (1978) iN That The Police OFFICer who obtained the Arrest warrant MADE A FAlse Statement iN Their AFFiDAVITS To secure A warrant From The Maugistrate Judge And had it NOT been For the FAlse Statement then there is A high PRobABiliTY that the MaR2istrate Judge would Not have FoUND ProAble CAUse And NO Arrest warrant would have been Issued.

The APPLICANT POINTS to The SULPhur SPRiN2 Police DePartment NArrative of The Arest Marked EXhibit (A)

(1)

IN Exhibit (A) Number Six clearly shows that The Police Officer says that he witness A hand to hand Transaction

The Appellant Points to Exhibit (B) hereto Attached Pages 8, 9, And 10 And shows that The Officer clearly Admitts At TRIAL that he did Not Witness ANY ACTUAL Transfer

The Appellant shows that had his Attorney of Record moved the COURT FOR A FRANKS Hearing they there is A High Probability that The Evidence would have been suppessed And Theefor the OUTcome of his TRIAL would have been different

The Appellant shows that he is ENTITLED To Relief STRICKLAND V WASHINGTON 466 US 668 (1984); EXPARTE PATTERSON 993 SW2d 114, 115 (Tex Crim AP 1999

<u>Request FOR APPOINTMENT of Counsel</u>

The Appellant shows that he is Currently AN INdigent INmate within The Texas DEPartment OF CRIMINAL JUSTICE INSTITUTIONAL DIVISION And being such there is A (D.O.C) POLICY That PREVENT INmates FROM being made Available To Legal copies.

(2)

There is also a policy that causes an inmate to file a request to have a case shepardized, as the Hutchins State Jail is a transfer facility and do not maintain as adequate law library

The Appellant shows that he in fact need an attorney to gather the necessary documentation and to do the leg work in connection with this case

Wherefore premises considered the Appellant prays that this honorable court would grant the appellants habeas application and find that the arrest warrant that was used to arrest the Appellant was founded on a false statement and therefor was issued without probable cause and not only was that arrest was illegal but all the fruits thereof was of a poisioness Tree and should be suppressed

Respectfully submitted

*Braylon Denny*

Appellant

(3)

## CERTIFICATE OF SERVICE

I, GRAYLON IVERY DO HEREBY state under OATH that A True And correct COPY OF THE Above AND Attached APPlicant Response was mailed on the 6th day of August 2015 to THE COURT OF CRIMINAL APPeals OF Texas P. O. Box 12308 CAPITOL Station, AUSTIN Texas 78711

RespectfulIY submitted

Graylon Ivery

APPellANT

(4)

# SULPHUR SPRINGS POLICE DEPARTMENT

## Narrative

Date of report: 04/18/2013          Exhibit (A)          Case Number: 1300010891

Incident Number :1300010891

1. ON 04-18-2013 AT APPROX. 2:15 PM SGT. ESTES, SGT. CROUSE AND LT. MCCLURE OF THE SULPHUR SPRINGS/HOPKINS COUNTY SPECIAL CRIMES UNIT MET WITH A CONFIDENTIAL INFORMANT, HERE AFTER REFFERED TO AS CI (CI # 12-11-180), AT A SECURE LOCATION IN SULPHUR SPRINGS, TX. THE PURPOSE OF THE MEETING WAS TO DISCUSS THE PURCHASE OF CRACK COCAINE FROM THE DEFENDANT: GRAYLON TARAYE IVERY B/M 05-10-1985.

2. AT APPROX. 2:21 PM THE CI AND THE CI'S VEHICLE WAS SEARCHED BY SGT. ESTES FOR ILLEGAL NARCOTICS OR MONEY WITH NEGATIVE RESULTS. THE CI WAS AT THIS TIME SUPPLIED WITH SEVERAL RECORDING DEVICES TO CAPTURE THE CONVERSATION AND TRANSACTION BETWEEN THE CI AND IVERY. THE CI WAS ISSUED $ 100.00 OF IMPREST MONEY TO MAKE THE PURCHASE.

3. AT APPROX. 2:23 PM THE CI AND SPECIAL CRIMES INVESTIGATORS LEFT THE SECURE LOCATION ENROUTE TO 310 W. BECKHAM ST. SPECIAL CRIMES INVESTIGATORS MAINTAINED SURVEILLANCE OF THE CI DURING THE OPERATION.

4. AT APPROX. 2:31 PM THE CI ARRIVED AT 310 W. BECKHAM ST. AND PARKED FACING WESTBOUND IN FRONT OF THE RESIDENCE. THE CI EXITED THE VEHICLE AND APPROACHED THE CARPORT DOOR AND MET THE SUSPECT (GRAYLON IVERY) IN THE CARPORT. THE CI AND IVERY ENTER INTO THE RESIDENCE FOR A BRIEF MOMENT BEFORE THE CI EXITS AND WALKS BACK TO HIS VEHICLE TO GET A JOB APPLICATION FORM FOR A SUBJECT INSIDE THE RESIDENCE.

5. AT APPROX. 2:33 PM THE CI RETURNS TO THE INSIDE OF 310 W. BECKHAM ST AND BEGINS SPEAKING WITH IVERY ONCE AGAIN.

6. AT APPROX. 2:35 PM THE CI GIVES IVERY $ 100.00 OF IMPREST MONEY FOR THE CRACK COCAINE. THE HAND TO HAND TRANSACTION IS MADE BETWEEN THE CI AND IVERY AND THE CI EXITS THE RESIDENCE AND WALKS BACK TO HIS VEHICLE. IVERY CAN CLEARLY BE SEEN VIA DVD-R DIRECTLY IN FRONT OF THE CI INSIDE THE RESIDENCE.

7. AT APPROX. 2:36 PM THE CI LEAVES IN HIS VEHICLE AND PROCEEDS BACK TO THE SECURE LOCATION WITH SPECIAL CRIMES INVESTIGATORS STILL MAINTAINING SURVEILLANCE OF THE CI.

8. AT APPROX. 2:43 PM THE CI AND SPECIAL CRIMES INVESTIGATORS ARRIVED BACK TO THE SECURE LOCATION. SGT. ESTES AT THIS TIME TOOK CUSTODY OF DRUG EXHIBIT #1, SIX OFF-WHITE ROCKS BELIEVED TO BE CRACK COCAINE. SGT. ESTES ALSO TOOK CUSTODY OF NON-DRUG EXHIBIT #2, DVD-R (VIDEO OF BUY) AND NON-DRUG EXHIBIT #3, CD-R (AUDIO OF BUY).

Officer: ESTES, MARK                    Approving Supervisor: ESTES, MARK

# SULPHUR SPRINGS POLICE DEPARTMENT

## Narrative

Date of report: 04/18/2013                    Case Number: 1300010891

9. SGT. ESTES MAINTAINED CUSTODY OF ALL EXHIBITS UNTIL RETURNING TO THE SULPHUR SPRINGS POLICE DEPT. ONCE AT THIS LOCATION SGT. ESTES FIELD TESTED THE SUSPECTED CRACK COCAINE USING A NIK (G) FIELD TEST KIT. THE SUSPECTED COCAINE TESTED POSITIVE FOR THE PRESENCE OF COCAINE AND WEIGHED APPROX. 0.9 GRAMS.

10. SGT. ESTES SECURED DRUG EXHIBIT #1 INTO THE SPECIAL CRIMES SECURE LOCKER ON 04-18-2013. SGT. ESTES PACKAGED AND PLACED DRUG EXHIBIT #1 INTO EVIDENCE AT THE SULPHUR SPRINGS POLICE DEPT. DRUG EXHIBIT #1 WILL BE TRANSPORTED TO THE TEXAS DPS CRIME LAB LOCATED IN TYLER, TX FOR DRUG ANALYSIS BY PROPERTY OFC. IRVING AT A LATER DATE.

11. THIS DELIVERY OF CRACK COCAINE WAS WITHIN 1000 FT. OF PACIFIC PARK ENHANCING THIS CHARGE TO MAN/DEL CS PG1<1G DRUG FREE ZONE "F3". THIS WAS THE SECOND PURCHASE OF CRACK COCAINE FROM THIS DEFENDANT ( GRAYLON IVERY) AT THIS SAME LOCATION (310 W. BECKHAM ST.) WITHIN A 1 WEEK INVESTIGATION INVOLVING GRAYLON IVERY.

12. ATTACHED IS A COPY OF THE PROPERTY RECORD SHEET, DPS LAB SUBMISSION, IMPREST MONEY, DIGITAL PHOTO'S OF THE CRACK COCAINE AND FIELD TEST KIT, CRIMINAL HISTORY ON GRAYLON IVERY, AND BOTH THE DVD-R (VIDEO) AND THE CD-R (AUDIO) OF THE BUY.

SGT. ESTES # 304 (SCU)

SULPHUR SPRINGS POLICE DEPT.

Officer: ESTES, MARK                    Approving Supervisor: ESTES, MARK

exchanged money for the crack cocaine at Appellant's apartment. The transfer was not witnessed by anyone else. A video was made of the transfer, but it too does not show a transfer had taken place. The only thing you can see in the video is an orange unmarked pill bottle, and there is no recorded transfer of this pill bottle or anything from any pill bottle from the Appellant to the CI.

There was no other corroborating evidence offered by the State. During cross-examination of Sgt. Mark Estes by Mr. Forsman, Appellant's trial attorney, Sgt. Estes agreed he did not witness any actual transfer take place. He testified:

Question: "Can we agree that you personally, Sergeant, did not eyeball, did not witness any actual transfer."

Answer: "That's correct." (Vol. 5, page 79, lines 9-18).

When you remove the CI's testimony, the officer says they didn't watch it; they didn't hear anything; they didn't see anything; and the video does not show anything. There is no corroborating evidence.

In direct examination Ellis claimed the transfer was completed by hand-to-hand transaction (Vol. 5, page 100, lines 11-25, and page 101, lines 1-4). The video shown to the jury does not show any transfer taking place from hand-to-hand, whether it be money or cocaine. All the video shows is a "pillbox" but not the content of the "pillbox" (Vol. 5, page 108, lines 3-25, and page 109, lines 1-17).

In Malone v. State, 253 S.W.3d 253, 258, (Tex. Crim. App. 2008) it states: "We hold that the standard for evaluating sufficiency of the evidence for corroboration under the accomplice-witness rule applies when evaluating sufficiency of the evidence for corroboration under the

covert-agent rule. Accordingly, when weighing the sufficiency of corroborating evidence under Art. 38.141(a), a reviewing court must exclude the testimony of the covert agent from consideration and examine the remaining evidence (i.e., non-covert agent evidence) to determine whether there is evidence that tends to connect the defendant to the commission of the offense." See also Taylor v. State, 328 S.W.3d 574, 577-78 (Tex. App.--Eastland 2010, pet. ref'd).

Jefferson v. State, 99 S.W. 3d 790, 793 (Tex. App.--Eastland 2003, pet. ref'd) states that "Surreptitious recording [of drug buy] is also 'other evidence tending to connect' appellant with the offense which was committed." However the recording in evidence in this case does not show any transfer. All that the tape shows is that the CI was in the Appellant's home.

The State attempted to offer corroborating evidence when they offered a pill bottle obtained from a later arrest over 2 months after the alleged transfer (July 1, 2013) purported to be the pill bottle shown on the video made some 74 days before the arrest (Vol. 5, page 120, lines 17-25, page 124, lines 13-16, page 125, lines 11-25, page 126, lines 1-5). Appellant would show that this unmarked, non-descript pill bottle on the video 74 days prior to the arrest and seizure of the pill bottle used as State's exhibit 7 is not evidence that corroborates the CI's testimony concerning the transfer.

There was no "eyeballing" of the transfer of money and the video the State used does not show an actual transfer of money (Vol. 5, page 134, lines 18-25, page 139, lines 17-25). Also, the money used for the drug purchase was never recovered or found. Again, this time quoting Lt. McClure:

Q: "... you, sir, did not actually eyeball the changing of money between anybody? Fair?"

A: "That's fair."

9

Q: "You did not eyeball the transfer of any controlled substance from one person to the other? Fair?"

A: "Fair. " (Vol. 5, page134, Lines 18-25, page 135, line 1)

Additionally, there is what amounts to a conflict between the confidential informant's testimony that a transfer of money and drugs took place and what the video and officers' testimony actually shows. This discrepancy between the CI's testimony and the State's other evidence is enough to raise a reasonable doubt as to Appellant's guilt and does not show the corroboration. The evidence presented as to transfer of drugs and money between CI and Appellant is therefore unsupported as required by Tex Code Crim. Proc. Ann art 38.141 (a), (b).

In summary, the State's only corroborative evidence of actual transfer taking place back in April 18, 2013, is a pill bottle confiscated from the Appellant when a warrant was executed on July 1, 2013. The State's claim that this is the same pill bottle in the video is totally without any proof. (Vol. 5, pages 94-95, pages 124-132, page 140, line 1-17). Therefore, the State did not prove the element of their offense for transfer beyond a reasonable doubt. And the statute is clear that you cannot use the CI's testimony unless there is some corroborating evidence.

Therefore, considering the above argument and facts, Appellant urges the court to overturn this sentence because the State did not meet their burden of proof and was not able to corroborate testimony of the confidential informant as to actual delivery and transfer. Without corroborating evidence of transfer, there can be no conviction. Therefore, this error is a reversible error and this Court should render a not guilty verdict.