**Opinion filed April 30, 2025**



In The

# Eleventh Court of Appeals

_____

**No. 11-23-00103-CR**

_____

**SIMPSON THOMPSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. 17824**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant, Simpson Thompson, guilty of delivery of methamphetamine in a drug-free zone in an amount by aggregate weight of less than one gram, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(b), 481.134(d) (West Supp. 2024). The jury found the two enhancement paragraphs alleged by the State to be true and assessed Appellant's punishment at

confinement for ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction in three issues. In his first two issues, Appellant challenges the sufficiency of the evidence to show (1) that he delivered methamphetamine, and (2) that said delivery occurred in a drug-free zone. In his third issue, Appellant argues that the trial court erred by denying him a pretrial hearing on his motion to suppress evidence. We affirm.

*Background Facts*

Appellant waived his right to counsel and appeared pro se at trial with court-appointed standby counsel. Ray Lopez, an investigator with the Palo Pinto County Sheriff's Office, testified that he worked with a confidential informant, Matthew Holder, to make a purchase of methamphetamine from Appellant. Investigator Lopez explained that Holder came to him with information that Appellant had offered Holder drugs in exchange for a ring. Investigator Lopez provided Holder with money to try and purchase methamphetamine from Appellant at the Super 8 Motel where Appellant was staying.

Investigator Lopez testified that the Super 8 Motel touches the property line of Mineral Wells High School. He explained that the area within 1,000 feet of the high school is a drug-free zone and that the Super 8 Motel was well within 1,000 feet of the high school.

Investigator Lopez said that he searched Holder before the buy and that Holder did not have any money or contraband on him. He then gave Holder a recording device and the money for the buy. Investigator Lopez positioned himself where he could observe Holder as he walked to the motel room and knocked on the door of Room No. 219. Once Holder went into the motel room, Investigator Lopez monitored the buy in "real time" from an app connected to the recording device. After the buy, Holder met Investigator Lopez at an agreed-upon location and gave

2

him the evidence. Investigator Lopez searched Holder again, and he did not have any contraband or money on him.

Investigator Lopez took the recording device from Holder and made a copy of the video. The video was played before the jury. Investigator Lopez testified that the substance Holder bought from Appellant was determined to be methamphetamine weighing 0.77 grams.

Holder testified at trial that he went to Investigator Lopez and asked about becoming a confidential informant because he wanted to help get "drug dealers off [of] the streets." Holder informed Investigator Lopez that he had pending charges and would like consideration on those cases in exchange for being a confidential informant.

Holder said that he met Appellant through a woman named Jennifer who told Holder that Appellant had inquired about Holder's ring. Holder then told Investigator Lopez that Appellant wanted to exchange drugs for the ring. Instead of trading the ring, Investigator Lopez gave Holder $50 to purchase methamphetamine from Appellant. Holder said that Investigator Lopez searched him before giving him the money and a recording device. According to Holder, he went straight to Appellant's motel room at the Super 8 Motel, and Jennifer opened the door. Once inside, Holder told Appellant that he had $50 to buy drugs. Holder testified that Appellant then poured methamphetamine into a "baggie," weighed it, and gave it to him in exchange for the $50. Holder identified Appellant as the person who sold him methamphetamine.

*Analysis*

*Sufficiency of the Evidence*

In his first and second issues, Appellant challenges the sufficiency of the evidence to support his conviction. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307

3

(1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see Baltimore v. State*, 689 S.W.3d 331, 341–42 (Tex. Crim. App. 2024) (statutory enhancements are subject to the same sufficiency review).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not

4

permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

Appellant first argues that no rational jury could have found beyond a reasonable doubt that he delivered methamphetamine. As relevant to this case, a person commits an offense if he knowingly delivers a controlled substance listed in Penalty Group 1 in an amount of less than one gram. HEALTH & SAFETY § 481.112(a), (b). "'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . regardless of whether there is an agency relationship." *Id.* § 481.002(8).

Appellant specifically argues that the evidence is insufficient to show that an actual delivery with the confidential informant took place. He relies upon Article 38.141 of the Texas Code of Criminal Procedure to support his evidentiary challenge. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141 (West Supp. 2024). Article 38.141 sets out the covert agent rule. In *Cook v. State*, we addressed the corroboration requirement for the testimony of a covert agent. 460 S.W.3d 703, 708 (Tex. App.—Eastland 2015, no pet.). As we stated in *Cook*, "[t]he standard for evaluating the sufficiency of the corroboration of the testimony of a covert witness, such as a confidential informant, is the same as that used for evaluating the sufficiency of the corroboration of the testimony of an accomplice witness." *Id.* (citing *Malone v. State*, 253 S.W.3d 253, 256–58 (Tex. Crim. App. 2008)). "Thus, when weighing the sufficiency of corroborating evidence under Article 38.141(a), we must exclude the testimony of the covert agent from consideration and examine the remaining evidence to determine whether there is evidence that tends to connect the defendant to the commission of the offense." *Id.* (citing *Malone*, 253 S.W.3d at 258). "The tends-to-connect standard does not present a high threshold." *Id.* at 708–

09 (citing *Randall v. State*, 218 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd)).

"Standing alone, the corroborating evidence need not prove the defendant's guilt beyond a reasonable doubt." *Id.* at 709 (citing *Malone*, 253 S.W.3d at 257). "To be sufficient, the corroborating evidence must show more than just the 'mere presence' of the defendant at or near the scene of the crime." *Id.* (quoting *Malone*, 253 S.W.3d at 257). The corroborating evidence does not have to directly link the defendant to the crime. *Id.*; *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd); *Smith v. State*, 211 S.W.3d 476, 478 (Tex. App.—Amarillo 2006, no pet.). "Instead, the corroborating evidence need only tend to connect the defendant to the offense." *Id.* (citing *Malone*, 253 S.W.3d at 258–59). "We review the corroborating evidence in the light most favorable to the verdict." *Id.*; *Taylor*, 328 S.W.3d at 578; *Smith*, 211 S.W.3d at 478.

Appellant contends that there was "no corroboration of delivery" because Investigator Lopez was not able to observe the alleged delivery from Appellant to Holder. Appellant is incorrect in making this assertion. Prior to entering the motel room, Investigator Lopez searched Holder to assure that he did not have any drugs in his possession. Investigator Lopez observed Holder go straight to Appellant's motel room. While Holder was in the motel room, Investigator Lopez monitored what occurred in the room using an app connected to a recording device.

As in *Cook*, the State presented the audio and video recordings of the drug transaction depicting Holder's purchase of methamphetamine from Appellant. *See Cook*, 460 S.W.3d at 709–10. Investigator Lopez identified Appellant in the video. He testified that in the video he saw a digital scale used to measure drugs and that he saw a bag of methamphetamine in Appellant's hand that he used to portion out the amount he gave to Holder. Investigator Lopez was able to observe Holder as he left the motel room and went straight to their agreed meeting location. Holder gave

6

Investigator Lopez the methamphetamine that he purchased from Appellant, and Investigator Lopez again searched Holder to make sure he did not have any contraband.

Appellant argues that the audio and video did not properly capture the delivery. However, as the finder of fact, the jury was permitted to weigh the evidence and make its own determinations and assessments of the images and sounds that were depicted in the audio and video recordings. *See Cook*, 460 S.W.3d at 709–10 (citing *Cantelon v. State*, 85 S.W.3d 457, 459–62 (Tex. App.–Austin 2002, no pet.)).

Having reviewed all of the evidence in the light most favorable to the jury's verdict, we conclude that the record before us contains sufficient evidence from which a rational jury could find beyond a reasonable doubt that Appellant delivered methamphetamine to Holder. The corroborating evidence alone tends to connect Appellant to the transaction, and the jury could have so concluded. Moreover, because Holder's testimony was corroborated, the jury could consider his testimony in the same manner as any other competent evidence. *See Castillo v. State*, 517 S.W.3d 363, 376 (Tex. App.—Eastland 2017, pet. ref'd) (citing *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002)). We overrule Appellant's first issue.

Appellant next argues that the evidence is insufficient to show that he delivered methamphetamine in a drug-free zone. The indictment alleged that Appellant committed the offense "in, on, or within 1,000 feet of real property that was owned, rented, or leased to a school or a school board, namely Mineral Wells High School or Mineral Wells I.S.D." Proof of the drug-free zone allegation enhanced the state-jail felony offense to a third-degree felony. *See* HEALTH & SAFETY § 481.134(d)(1); *White v. State*, 509 S.W.3d 307, 309 n.2 (Tex. Crim. App. 2017).

7

Investigator Lopez testified that the City of Mineral Wells had adopted resolutions regarding the drug-free zones within the city and that he was familiar with the drug-free zone for Mineral Wells High School. Investigator Lopez obtained a map of the drug-free zone for Mineral Wells High School that was admitted at trial without objection. Investigator Lopez testified that the area shaded in green on the map was Mineral Wells High School property and that the area shaded in light gray was the area within 1,000 feet of the high school property. Investigator Lopez showed the jury the location of the Super 8 Motel on the map and noted that it was touching the property line of Mineral Wells High School—thus, within 1,000 feet of the high school.

In a prosecution under Section 481.134, a map produced or reproduced by a municipal engineer for the purpose of showing the location and boundaries of a drug-free zone "is admissible in evidence and is prima facie evidence of the location or boundaries of those areas if the governing body of the municipality or county adopts a resolution or ordinance approving the map as an official finding and record of the location or boundaries of those areas." HEALTH & SAFETY § 481.135(a) (West 2017); *Young v. State*, 14 S.W.3d 748, 754 (Tex. Crim. App. 2000). Investigator Lopez testified that the City of Mineral Wells had created the map that he used to determine the applicable drug-free zone. He further testified that the City of Mineral Wells had adopted resolutions regarding the drug-free zones. While Investigator Lopez did not testify specifically that the City of Mineral Wells had adopted a resolution or ordinance approving the map, the map was probative proof of the drug-free zone boundaries. *See Young*, 14 S.W.3d at 754.

Appellant argues that there was no testimony regarding approximate distances between the motel and the school and no evidence regarding knowledge of actual ownership of the property. While Investigator Lopez did not personally measure the distance between the motel and the school property, he testified based upon his

8

knowledge of the drug-free zone that the motel was well within 1,000 feet of the Mineral Wells High School drug-free zone. The premises was depicted as Mineral Wells High School. The name of the premises alone may be sufficient to raise a presumption that it is a private or public elementary or secondary school. *Id.* Appellant further argues that there was no testimony from more than one reliable witness as to the drug-free zone. However, Appellant does not cite to any authority to support his argument that more than one witness is required to establish a drug-free zone. We note in this regard that, unlike the situations in *Baltimore v. State* and *Curlee v. State* where the State relied on the conclusory, unsupported opinions of police officers about a property's status, Investigator Lopez supported his testimony that the delivery occurred in a drug-free zone with city maps and his personal familiarity with the area. *See Baltimore*, 689 S.W.3d at 344–45; *Curlee v. State*, 620 S.W.3d 767, 787 (Tex. Crim. App. 2021).

Because a rational jury could have found beyond a reasonable doubt that the offense occurred within 1,000 feet of Mineral Wells High School, we hold that the evidence is sufficient to show that Appellant committed the offense in a drug-free zone. We overrule Appellant's second issue.

*Hearing on Appellant's Motion to Suppress*

In his third issue, Appellant argues that the trial court erred by denying a hearing on his motion to suppress evidence. In pro se correspondence to the trial court dated January 11, 2022, that was titled "Motion to Suppress Evidence," Appellant asked that "all the evidence in this matter be suppressed." The record shows that Appellant was represented by counsel at that time. There is nothing to indicate that Appellant's correspondence was served on the State. In the correspondence, Appellant requested that all evidence be suppressed because (1) he was under illegal surveillance in violation of the Fourth Amendment, (2) law enforcement maliciously framed him, (3) his appointed counsel violated his rights,

9

(4) police body camera footage would show that officers placed the drugs in his room in violation of his rights under the United States Constitution and Texas constitution, (5) evidence was destroyed that would prove his innocence, and (6) law enforcement violated its own policies and procedures.

At trial, after the State and Appellant made their opening statements, but before the presentation of evidence, Appellant orally asked "for a Motion to Suppress the video because the video is tampered with." The trial court removed the jury and asked the State to respond to Appellant's oral motion to suppress. The State explained that the motion was untimely because the "Article 28.01 hearing" had already been held. The trial court asked if there was a motion previously filed, and the State responded that there was not a previous motion to suppress.[1] The State also argued that the motion was untimely. The trial court explained to Appellant that he could cross-examine the witnesses about whether they edited the video, and it denied the oral motion to suppress.

Appellant does not complain on appeal that the trial court erred by denying the motion to suppress, but only that the trial court erred by denying a hearing on the motion. He contends that he timely filed a motion to suppress and that he re-urged the motion at trial before the presentation of evidence. The State responds that Appellant has not preserved his complaint for review because there is nothing in the record to show that he timely requested a hearing on the motion.

In Appellant's correspondence titled "Motion to Suppress Evidence," he did not request a pretrial hearing on the motion. Appellant did not bring the matter to the attention of the trial court at any of the pretrial hearings. Appellant contends on

---

[1]Appellant contends that the State incorrectly told the trial court that no written suppression motion was filed. Although the State did inform the trial court that no written suppression motion was filed, we note that there is nothing in the record to indicate that Appellant's correspondence titled "Motion to Suppress Evidence" was properly served upon the State. Thus, the State could have been unaware of its existence.

appeal that he "re-urged" his written motion at trial, but he never referred to a written motion while making his oral motion to suppress. There is nothing in the record to show that Appellant objected to the trial court's denial of a hearing on the motion. Thus, Appellant failed to preserve his appellate complaint for review. *See* TEX. R. APP. P. 33.1(a)(1).

Moreover, Article 28.01 of the Texas Code of Criminal Procedure provides that the trial court may set a criminal case for pretrial hearing on certain matters, including a motion to suppress evidence. CRIM. PROC. art. 28.01 § 1(6) (West 2006). When a criminal case is set for an Article 28.01 pretrial hearing, any preliminary matters not raised or filed seven days before the hearing cannot thereafter be raised or filed, except by permission of the trial court for good cause shown, provided that the defendant must have sufficient notice of such a hearing to allow him not less than ten days in which to raise or file such preliminary matters. *Id.* art. 28.01 § 2.

Even if Appellant properly preserved his argument that the trial court erred by denying a hearing on his motion, Article 28.01 "is not a mandatory statute, but is one directed to the [trial] court's discretion." *Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988). "The question of whether to hold a hearing on a pretrial motion to suppress evidence rests within the discretion of the trial court." *Id.* No error is presented if the trial court, in its discretion, declines to hear the motion. *Id.* The trial court may elect to determine the merits of the suppression motion during the trial, when and if the defendant has lodged the proper objection. *Id.* Even if the defendant specifically requests a pretrial hearing, no error is preserved if the trial court declines to hear the matter. *Id.* "If the trial court declines to hear a pretrial motion to suppress, it is incumbent upon a defendant to properly object at trial and obtain an adverse ruling in order to preserve any error." *State v. Reed*, 888 S.W.2d 117, 119 (Tex. App.—San Antonio 1994, no pet.).

11

Here, Appellant has not shown that the trial court abused its discretion by denying a hearing on his motion to suppress. As noted previously, the trial court's decision to defer ruling on Appellant's evidentiary challenge until the presentation of evidence was not an abuse of discretion. *See Calloway*, 743 S.W.2d at 649. Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


April 30, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.