**Opinion filed February 28, 2020**



In The

# Elebenth Court of Appeals

_____

## No. 11-18-00044-CR

_____

## HOMERO AVITIA RETANA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24753**

## M E M O R A N D U M   O P I N I O N

After a bench trial, the trial court convicted Homero Avitia Retana of possession with intent to deliver more than four grams but less than 200 grams of methamphetamine, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2017). Appellant pleaded "true" to two enhancement paragraphs alleged by the State. The trial court assessed Appellant's punishment at

confinement for a term of ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice.

In three issues on appeal, Appellant argues that (1) the trial court erred in denying his motion to suppress evidence obtained during a search that followed a canine sniff of a vehicle in which Appellant was a passenger, (2) the evidence is insufficient to prove that he knowingly possessed methamphetamine, and (3) the evidence is insufficient to prove that he had the intent to deliver methamphetamine. We affirm.

*Background Facts*

Carlyle Gover is a narcotics investigator with the Brown County Sheriff's Office. On April 27, 2016, a fellow narcotics investigator, Robert Ramirez, advised Investigator Gover that Investigator Ramirez had received a tip about possible drug activity. Investigator Ramirez was unable to follow up on the tip, so he relayed the information to Investigator Gover. Investigator Ramirez, however, did not disclose the identity of the informant or any information about the informant's reliability. Thus, we will presume the tip was anonymous, as the trial court did.

According to the informant, a white male, a Hispanic male, and Mandy Hardin would be transporting a large quantity of methamphetamine in a blue 2008 Chrysler 300. The informant also provided the license plate number for the Chrysler. Investigator Gover knew that Hardin was associated with narcotics. The informant said that Hardin and the two men would leave a house together in the Chrysler. Investigator Gover knew that the residents at that address used narcotics.

Based on the tip, Investigator Gover drove to the house to conduct surveillance. Investigator Gover saw a blue Chrysler 300 with the same license plate number provided by the informant. Investigator Gover observed Hardin, a white male, and a Hispanic male loading items into the Chrysler. At some point, all three individuals left in the Chrysler, and Investigator Gover followed them. Hardin was

driving, and she rolled through a stop sign. Investigator Gover initiated a traffic stop. *See* TEX. TRANSP. CODE ANN. § 544.010(c) (West 2011) (requiring a vehicle operator to stop at a stop sign). Investigator Gover testified that Hardin "drove a little [farther] than is typical" but that she eventually stopped.

Investigator Gover approached the Chrysler and told Hardin why he had stopped her. Investigator Gover questioned Hardin about "where she was going, what she was doing, [and] who was in the car with her." Investigator Gover identified the white male as Tracy Conn and the Hispanic male as Appellant.[1] Hardin said that the Chrysler belonged to Conn. Investigator Gover suspected that Hardin was high on methamphetamine because she was "manic," "talking fast," and running her thoughts together. Hardin's answers regarding their destination were inconsistent because, although they were supposedly traveling to the Dallas–Fort Worth Metroplex, they were going the wrong direction. After speaking with Hardin, Investigator Gover checked all three individuals' driver's licenses, checked for warrants, and inspected the vehicle's registration and insurance. Investigator Gover also requested Conn's consent to search the vehicle, to which Conn responded: "You need a search warrant." Investigator Gover thought this response was "very odd."

After being denied consent to search, Investigator Gover tried unsuccessfully to obtain the services of a canine unit in the area. Investigator Gover thought that he had reasonable suspicion that methamphetamine was in the vehicle, but not probable cause. Investigator Gover testified that the detention would have been unreasonably long had he waited for a canine unit to arrive, so he gave Hardin a verbal warning and terminated the detention.

---

[1]Both Conn and Appellant filed motions to suppress. The trial court held a joint hearing on both motions. We addressed Conn's appeal of the trial court's denial of the motion to suppress in *Conn v. State*, No. 11-17-00361-CR, 2019 WL 7372273, at *1 (Tex. App.—Eastland Dec. 31, 2019, no pet. h.) (mem. op., not designated for publication).

Afterward, Investigator Gover decided to patrol a nearby, high-crime neighborhood. Five to ten minutes after the first stop ended, Investigator Gover saw Conn's Chrysler "parked on Brin Street in front of Geraldo Salazar's house." Investigator Gover knew Salazar's home to be associated with narcotics. Investigator Gover's suspicion was heightened by encountering the Chrysler in a high-crime area known for drug activity. Finding the Chrysler there also increased Investigator Gover's suspicion because it conflicted with where Hardin had said she was going.

The Chrysler was blocking Salazar's driveway, which was a traffic violation. *See* TRANSP. § 545.302(b)(1) (prohibiting parking in front of a private driveway). At the same time Investigator Gover spotted the Chrysler, a canine unit became available. Investigator Gover believed that he still had a reasonable suspicion that the Chrysler contained methamphetamine based on the first stop, so he decided to initiate a second traffic stop and wait for the canine unit to arrive. Investigator Gover pulled behind the Chrysler and activated his emergency lights. Within seconds, Appellant and Conn got out of the Chrysler and walked toward where Hardin was talking to Salazar. Investigator Gover testified that, based on his experience as a narcotics investigator, suspects will try to distance themselves from a vehicle when they know contraband is inside of it.

Investigator Gover approached Hardin and informed her that it was a traffic violation to park in front of a private driveway. Investigator Gover testified that he follows the same procedure when he stops a car for a nonmoving violation as he does for a moving violation. But having just performed the normal traffic stop procedures, he did not do so again during the second stop with respect to checking for valid license, registration, and proof of insurance. After informing Hardin of her traffic violation, Investigator Gover told her that a canine unit was on the way.

4

Captain James Stroope of the Brown County Sheriff's Office arrived about ten minutes later with his canine, Buster. During an open-air sniff, Buster alerted on the Chrysler. Investigator Gover and Captain Stroope then searched the Chrysler. Captain Stroope found a bank bag on the floorboard in front of the front passenger seat, and a plastic bag containing 5.04 grams of methamphetamine was found inside the bank bag. The bank bag also contained various items of drug paraphernalia, including approximately 100 plastic baggies, methamphetamine pipes, and a digital scale. Captain Stroope found a "meth[amphetamine] bong" in the center console. In addition, Investigator Gover testified that an uncommonly high number of butane "torch" lighters, which are used for smoking methamphetamine, were discovered in the Chrysler.

During a more thorough search of the car at the police station, officers discovered more methamphetamine in a black box, which was found on the floorboard underneath the front passenger seat. The methamphetamine in the black box was split into multiple plastic baggies weighing roughly one gram each. Investigator Gover testified that methamphetamine packaged in that amount indicated that the baggies were intended to be sold to other distributors, rather than daily users. The black box contained a total of 24.39 grams of methamphetamine.

Before trial, Appellant moved to suppress the evidence obtained as a result of the search. At the hearing on Appellant's motion to suppress, Appellant argued that Investigator Gover lacked reasonable suspicion to prolong the second stop. The State countered that, based on Investigator Gover's observations and the anonymous tip, Investigator Gover had reasonable suspicion to briefly prolong the second stop until the canine unit arrived. The trial court denied Appellant's motion to suppress.

Additional details of Appellant's activities in the hours leading up to his arrest were developed at trial through the testimony of Hardin, who was called by the State as a witness. Hardin and Conn were lifelong friends. Hardin lived in Brownwood

and Conn lived in the Dallas area.  On April 26, 2016, Conn called Hardin and told her that he was in the Brownwood area and that he wanted to see her.  Conn also told Hardin that he "had some stuff" with him, which she testified meant methamphetamine.

Conn arrived in Brownwood in the early morning hours of April 27. Appellant accompanied Conn when they arrived at Hardin's home.  Hardin had not previously met Appellant.  Shortly thereafter, Hardin, Conn, and Appellant all "got high on methamphetamine."  Conn supplied the methamphetamine and a glass pipe that they used to smoke the methamphetamine.  Conn had the methamphetamine in a plastic bag, and he kept the plastic bag inside a gray bank bag.  Hardin estimated that the plastic bag contained about four or five grams of methamphetamine.  Conn also showed Hardin an airtight plastic box that Conn had modified by painting it black and placing a magnet inside of it.  After discussing it with Conn and Appellant, Hardin understood that the black box was used to hide methamphetamine underneath a vehicle.  Hardin did not know whether the black box contained methamphetamine at that time.

At some point, Conn and Appellant told Hardin that they wanted to sell methamphetamine while they were in Brownwood.  Hardin helped Conn and Appellant make three methamphetamine sales to individuals in Brownwood on April 27.  The first sale was for $20 and occurred at Hardin's home.  Appellant was in the room when the transaction took place.  Afterward, Hardin saw Conn give Appellant the money from the sale.  The second sale was for $50 and occurred in the parking lot of a local business.  Appellant was present when the sale took place.  The third sale was for $100 and occurred at the buyer's home.  Hardin, Conn, and Appellant all traveled to the buyer's home, but Hardin was unsure whether Appellant was inside the home with Conn when the sale took place.

*Analysis*

We begin by reviewing Appellant's challenges to the sufficiency of the evidence to support his conviction. In his second and third issues, Appellant contends that the evidence was insufficient to support his conviction. We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Before turning to Appellant's sufficiency issues, we must first address his contentions that Hardin's testimony constituted uncorroborated accomplice testimony. Appellant asserts that the only evidence linking him to the

7

methamphetamine is Hardin's "uncorroborated accomplice testimony." Appellant further argues that "there is no evidence, save for [Hardin's] uncorroborated accomplice testimony, that [Appellant] delivered or that he aided in the delivery of illegal narcotics."

Article 38.14 of the Texas Code of Criminal Procedure provides that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Thus, in order to support a conviction based upon the testimony of an accomplice, there must be corroborating evidence that tends to connect the accused with the offense. *Id.*; *see Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

In reviewing the sufficiency of the corroborating evidence, we eliminate the accomplice testimony from consideration and focus on the remaining portions of the record to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim. App. 1999). The corroborating evidence may be direct or circumstantial and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *Solomon*, 49 S.W.3d at 361; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). We review the corroborating evidence in the light most favorable to the verdict. *Taylor v. State*, 328 S.W.3d 574, 578 (Tex. App.—Eastland 2010, pet. ref'd). Such evidence "is sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the accused to the offense." *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (citing *Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009)). Once corroborated, testimony of an accomplice may

8

be considered in the same manner as any other competent evidence. *See Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

Here, non-accomplice testimony was introduced showing that Appellant was in the back passenger seat near the location of the methamphetamine, that numerous items of drug paraphernalia were discovered inside the car, that the car matched the description given to Investigator Ramirez by the informant, that Appellant matched the physical description provided by the informant, and that the informant told Investigator Ramirez that the occupants of the Chrysler were traveling with a large amount of methamphetamine. It was rational for the trial court sitting as the factfinder to find that the corroborating evidence tended to connect Appellant to the possession of the methamphetamine with intent to deliver. *See Ibarra v. State*, 479 S.W.3d 481, 487 (Tex. App.—Eastland 2015, pet. ref'd). Therefore, we will consider Hardin's accomplice witness testimony in reviewing the sufficiency of the evidence.

In his second issue, Appellant argues that the evidence is insufficient to prove that he knowingly possessed methamphetamine. He contends that the State only showed that he was in close proximity to the drugs because they were located in a car in which he was a passenger. A person commits the offense of possession of a controlled substance with intent to deliver if he knowingly possesses a narcotic with the intent to deliver it. HEALTH & SAFETY § 481.112(a). Possession is defined as "actual care, custody, control or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2019). A person's possession of a controlled substance need not be exclusive—joint possession will suffice. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). To establish possession of a controlled substance, the State must show (1) that the accused exercised care, control, or management over the contraband and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005),

9

*overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 & n.32 (Tex. Crim. App. 2015). The evidence must establish that the accused's connection with the drugs is more than just his fortuitous proximity to someone else's drugs. *Id.* at 405–06.

Texas courts have formulated the "affirmative links rule," which provides that, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id.* at 406 (alteration in original) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts). The affirmative links rule is routinely employed to establish joint possession when the accused is not in exclusive possession of the place where the drugs are found. *Poindexter*, 153 S.W.3d at 406. "This rule simply restates the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.*

Courts have identified the following factors as affirmative links that may establish an accused's knowing possession of a controlled substance: (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to, and the accessibility of, the contraband; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed narcotics or other contraband when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the accused owned or had the right to

possess the place where the contraband was found; (12) whether the place where the contraband was found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt. *Evans*, 202 S.W.3d at 162 n.12. Many of these same factors have been used by courts to determine if a person possessed a controlled substance with the intent to deliver. *See Guttery v. State*, No. 11-12-00160-CR, 2014 WL 3398144, at *2–3 (Tex. App.—Eastland July 10, 2014, pet. ref'd) (mem. op., not designated for publication).

Appellant contends that only one factor—Appellant's presence when the search was conducted—supports the conclusion that Appellant possessed the methamphetamine found in the Chrysler. We disagree. We first note that Appellant's analysis does not include Hardin's inculpatory testimony—based upon his assertion that her testimony was uncorroborated accomplice witness testimony. We have determined that Hardin's trial testimony was sufficiently corroborated as required by Article 38.14.

In addition to Appellant's presence when the methamphetamine was found, other facts justify the trial court's conclusion that Appellant jointly possessed the methamphetamine and knew that there was methamphetamine in the Chrysler. The black box was found underneath the front passenger seat. Appellant was seated in the backseat on the passenger side, so Appellant was in close proximity and had ready access to the methamphetamine in the black box (the third factor). When Investigator Gover initiated the second traffic stop, Appellant attempted to distance himself from the Chrysler. Further, a patrol deputy who was present during both traffic stops testified at trial that Appellant seemed nervous and avoided making eye contact. A reasonable factfinder could conclude that these actions by Appellant were furtive gestures (the eighth factor) and indicated a consciousness of guilt (the fourteenth factor). There were numerous items of paraphernalia in the Chrysler (the

11

tenth factor), including a "meth[amphetamine] bong," multiple methamphetamine pipes, numerous butane "torch" lighters, approximately 100 plastic baggies, and a digital scale, all of which are associated with methamphetamine use or distribution.

Appellant also had either $163 or $164 in his possession when he was arrested. Although this is not necessarily a large amount of cash (the thirteenth factor), courts have found that similar amounts constituted an affirmative, albeit weak, link to drug possession. *See Evans*, 202 S.W.3d at 163 (finding that a defendant having $160 when he was apparently unemployed to be an affirmative, albeit weak, link to drug possession); *Brown v. State*, 243 S.W.3d 141, 150 (Tex. App.—Eastland 2007, pet. ref'd) (considering a defendant's possession of $93 in determining whether the defendant had the intent to deliver). But unlike in *Evans*, other circumstantial evidence here strengthens the link between Appellant's possession of the cash and his possession of the methamphetamine. Hardin testified that they made three methamphetamine sales on April 27 for amounts totaling approximately $170, which is close to the amount Appellant had in his possession. Further, neither Conn nor Hardin had any cash when they were arrested. The facts strengthen Appellant's link to the methamphetamine. The large quantity of methamphetamine recovered from the Chrysler, almost thirty grams, constitutes another factor linking Appellant to the methamphetamine. *See Wright v. State*, 401 S.W.3d 813, 819 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Based on the evidence affirmatively linking Appellant to the methamphetamine, a rational factfinder could have found beyond a reasonable doubt that Appellant knowingly possessed both containers of methamphetamine. We overrule Appellant's second issue.

In his third issue, Appellant contends that the evidence is insufficient to show that he had an intent to deliver methamphetamine. Appellant's argument is essentially derivative of his argument from his second issue. Appellant contends that, "if [Appellant] was not himself in possession of methamphetamine and did not

jointly possess it as a party to the person in possession, . . . it follows that [Appellant] could not have intended to deliver that which he did not possess." Having determined that the evidence is sufficient to show that Appellant possessed methamphetamine, Appellant's derivative argument necessarily fails. But regardless, the evidence is sufficient to demonstrate that Appellant had the intent to deliver methamphetamine.

"'Deliver' means to transfer, actually or constructively, to another a controlled substance . . . ." HEALTH & SAFETY § 481.002(8) (West Supp. 2019). Intent to deliver may be proved with circumstantial evidence, including evidence that the defendant possessed the contraband. *Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "Intent can be inferred from the acts, words, and conduct of the accused." *Id.* at 326 (quoting *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). The expert testimony of an experienced law enforcement officer may be used to establish an accused's intent to deliver. *Id.* The factors to be considered in determining whether a defendant possessed contraband with an intent to deliver include (1) the nature of the location where the defendant was arrested, (2) the quantity of drugs the defendant possessed, (3) the manner of packaging the drugs, (4) the presence or absence of drug paraphernalia (for either use or sale), (5) whether the defendant possessed a large amount of cash, and (6) the defendant's status as a drug user. *Kibble v. State*, 340 S.W.3d 14, 18–19 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Moreno*, 195 S.W.3d at 325; *see Guttery*, 2014 WL 3398144, at *3. This list of factors is not exclusive, nor must they all be present to establish a defendant's intent to deliver. *Kibble*, 340 S.W.3d at 19.

Here, Appellant was arrested in a high-crime area known for drug offenses. *See Jordan v. State*, 139 S.W.3d 723, 726 (Tex. App.—Fort Worth 2004, no pet.); *Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist] 1993, no pet.). As previously discussed, Appellant jointly possessed a large amount of

13

methamphetamine—almost thirty grams—which is more than typical users would possess. The methamphetamine in the black box was distributed into multiple plastic baggies, and Investigator Gover testified that the amounts in each baggie indicated to him that they were intended to be sold to other drug dealers. Thus, the manner of packaging strongly indicated an intent to sell. *See Moreno*, 195 S.W.3d at 326.

Various items of drug paraphernalia were in the Chrysler, both for use and for sale. Officers recovered a digital scale and approximately 100 unused plastic baggies from the Chrysler, which strongly indicated an intent to deliver. *See Ibarra*, 479 S.W.3d at 488. Although substantial paraphernalia for methamphetamine use was also present, that does not significantly diminish the logical force of the paraphernalia indicating an intent to deliver. The amount of cash in Appellant's possession was almost the same amount that was derived by the methamphetamine sales that occurred earlier that day, indicating that Appellant was holding the proceeds from the day's drug deals. Further, Hardin testified that she and Appellant discussed selling methamphetamine in Brownwood and that Appellant was present when the sales occurred. Finally, Investigator Gover, an experienced narcotics investigator, testified that the amount of methamphetamine and the specific paraphernalia recovered indicated an intent to deliver. These matters all constitute evidence from which a rational factfinder could have found beyond a reasonable doubt that Appellant had the intent to deliver methamphetamine. We overrule Appellant's third issue.

In his first issue, Appellant argues that the trial court erred when it denied his motion to suppress because Investigator Gover lacked reasonable suspicion to prolong Appellant's detention after completing the second stop's mission of informing Hardin that she was illegally parked. Specifically, Appellant asserts that "[t]he arresting officer in this case detained defendant beyond a time reasonably

14

required to complete the mission of issuing a parking ticket." Thus, Appellant asserts that Investigator Gover should have simply issued Hardin a ticket for her parking violation during the second stop without detaining her and the other occupants while waiting for the canine officer to arrive. We disagree.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 923.

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and is free to believe or disbelieve any or all of the evidence presented. *See id.* at 24–25. "If supported by the record, a trial court's ruling on a motion to suppress will not be overturned." *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

As noted by the Texas Court of Criminal Appeals in *Wade v. State*,

> There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause.

422 S.W.3d 661, 667 (Tex. Crim. App. 2013). This case concerns the second category—an investigative detention. *See id.*

"The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arizu*, 534 U.S. 266, 273 (2002)). In such cases, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *Arizu*, 534 U.S. at 273); *see Terry v. Ohio*, 392 U.S. 1, 9 (1968). A seizure justified only by a traffic violation becomes unlawful if prolonged beyond the time reasonably required to conduct the traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015); *Ramirez-Tamayo*, 537 S.W.3d at 36. Thus, continuing a brief investigatory detention beyond the time necessary to conduct a traffic stop requires reasonable suspicion of criminal activity apart from the traffic violation. *Ramirez-Tamayo*, 537 S.W.3d at 36; *see Rodriguez*, 575 U.S. at 357–58.

Reasonable suspicion for a detention exists when a police officer "has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Wade*, 422 S.W.3d at 668. This is an objective standard that disregards the officer's actual subjective intent and looks

16

instead to whether there was an objectively justifiable basis for the detention. *Id.* "When assessing the existence of reasonable suspicion, a reviewing court must look to the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." *Ramirez-Tamayo*, 537 S.W.3d at 36. Although the circumstances may seem innocent in isolation, an investigatory detention is justified if the circumstances combine to reasonably suggest imminent criminal conduct. *Id.* The lesser standard of reasonable suspicion is satisfied if "the information is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that something of an apparently criminal nature is brewing." *Id.* (quoting *Wade*, 422 S.W.3d at 668). A reasonable suspicion determination "need not rule out the possibility of innocent conduct." *Id.* (quoting *Leming v. State*, 493 S.W.3d 552, 565 (Tex. Crim. App. 2016)).

Appellant argues that Investigator Gover lacked reasonable suspicion to prolong Appellant's detention during the second traffic stop because Investigator Gover developed no new evidence after the first stop concluded. Thus, Appellant contends that Investigator Gover "was bound to terminate the second detention as soon as its purpose was completed."

Appellant's argument fails for two reasons. First, Appellant incorrectly assumes that Investigator Gover had not developed reasonable suspicion during the first traffic stop. As Investigator Gover's suspicions were not dispelled during the first stop, there is no reason why his suspicions could not carry over to the second stop. Second, even assuming Investigator Gover lacked reasonable suspicion at the end of the first traffic stop, Investigator Gover made observations after the first stop concluded that added to his suspicion before completing the second stop's mission. With that in mind, we turn to whether Investigator Gover had reasonable suspicion to briefly detain Appellant until the canine unit arrived.

We note at the outset that the Texas Court of Criminal Appeals has cautioned against using a divide-and-conquer approach by viewing the relevant events in insolation. *Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016). Instead, we are to consider the cumulative force of all of the circumstances. *Id.* (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)).

"An anonymous tip alone is seldom sufficient to establish reasonable suspicion." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). To provide reasonable suspicion, an anonymous tip needs some indicia that the informant is "credible or that his information is reliable." *Id.* One way an officer can evaluate an anonymous tip is through corroboration of "enough facts to reasonably conclude that the information given to him is reliable." *Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005) (citing *Alabama v. White*, 496 U.S. 325, 330–31 (1990)). Corroboration does not require that the officer personally observe the illegal conduct described by the tip. *Id.*

The tip here alleged that a specific vehicle would leave a specific address with a large quantity of methamphetamine. The tip thoroughly described the vehicle, including the year, make, model, color, and license plate number. Investigator Gover visually confirmed that the specific vehicle was at the location provided by the informant. The tip identified Hardin by name and accurately described Appellant and Conn by their race and gender. Investigator Gover recognized Hardin and visually confirmed the physical descriptions of Appellant and Conn.

Furthermore, the tip accurately predicted future conduct of its subjects. A tip that provides "[a]n accurate description of a subject's readily observable location and appearance" "does not show that the tipster has knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). But a tip that predicts future behavior is more reliable because it demonstrates "a special familiarity with [a

18

person's] affairs." *White*, 496 U.S. at 332. In *White*, the Court concluded that an anonymous tip, after being corroborated by the officer's observations, exhibited sufficient indicia of reliability to establish reasonable suspicion because it accurately predicted "that respondent would shortly leave the building, get in the described car, and drive the most direct route to [a specific location]." *Id.* Here, the tip correctly predicted that three individuals would be traveling in the Chrysler and that they would leave 2700 Avenue B together. We need not determine whether the tip was sufficiently reliable alone to support reasonable suspicion, however, because Appellant's detention during the second stop was not based solely on the tip.

In addition to the tip, Investigator Gover possessed other information by the time Appellant was detained during the second stop. Investigator Gover knew the address the tipster provided to be associated with narcotics, and he knew that Hardin was involved with narcotics distribution. When Investigator Gover initiated the first traffic stop, Hardin took longer than usual to pull over. Based upon his observation of Hardin during the first stop, Investigator Gover believed that Hardin was under the influence of methamphetamine. *See Furr*, 499 S.W.3d at 880 (officer's observation that suspect appeared to be under the influence of drugs is a factor supporting reasonable suspicion). During the first stop, Conn refused Investigator Gover's request to search the Chrysler by stating that Investigator Gover "need[ed] a search warrant," a comment that Investigator Gover believed to be "very odd." While a citizen's refusal to consent to a search cannot be the "prominent factor" in a determination of reasonable suspicion, it can be a factor in the determination when combined with additional suspicious factors. *Wade*, 422 S.W.3d at 674–75; *see Matthews*, 431 S.W.3d at 605 n.33.

The second encounter occurred in a high-crime area—known for drug offenses—in front of a house that Investigator Gover knew to be associated with narcotics. *See Furr*, 499 S.W.3d at 880 (suspect's presence in area known by police

"to be a 'high drug, high crime' area" supports a determination of reasonable suspicion). This location was inconsistent with where Hardin had claimed they were traveling. Furthermore, Appellant and Conn exited the Chrysler when Investigator Gover pulled behind them. Investigator Gover testified that exiting a vehicle in this situation can indicate that a suspect is trying to distance himself from contraband that he knows is inside of the vehicle.

Viewed individually, these facts might not justify an investigatory detention. Viewed collectively, however, the circumstances provided reasonable suspicion justifying the ten-minute wait for the canine unit to arrive. *See id.* We overrule Appellant's first issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

February 28, 2020

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.